JOHN D. BROWNLEE, Respondent, *v.* CHARLES HEWITT, Appellant.

### March 7, 1876.

1. Where a false statement as to the value of land, which excludes the possibility of honest error in judgment, is relied upon by a contracting party, and is the proximate cause of the transaction which results in damage to plaintiff, plaintiff is entitled to recover.

2. A false statement as to the value or quality of land may be fraudulent in law, though made in good faith.

3. Where the question is as to real estate, and the facts are peculiarly within the knowledge of defendant, and plaintiff relied on his statements, the negligence of plaintiff in making inquiry will not excuse the defendant.

4. Where counsel are sent out of the court-room to argue the cause to the jury out of the presence of the judge before whom the cause was tried, if improper remarks are made to the jury on either side, calculated to prejudice the jury, a new trial should be granted, on the application of the party aggrieved, unless it clearly appears that no evil result was produced by these remarks.

5. The fact that the party aggrieved consented to argue the cause out of the presence of the court, when requested so to do by the judge trying the cause, does not constitute a waiver of his right to have the argument of the cause conducted in the presence of the court.

6. It is error for a judge to absent himself during the closing argument of the cause before the jury.

APPEAL from St. Louis Circuit Court.

*Reversed and remanded.*

*Slayback & Haeussler,* for appellant, cited: Ried *v.* Piedmont, etc., 58 Mo. 422; Clarke *v.* Hammerle, 27 Mo. 55; Mead *v.* Brotherton, 30 Mo. 201; Tood *v.* Boone County, 8 Mo. 431; Alexander *v.* Keer, 2 Rawle (Penn.), 83; Chew *v.* Caliott, 1 Walk. (Mich.) 84; Knouff *v.* Thompson, 16 Penn. 357; Kerr on Fr. & Mis. 83, 84; 2 Add. on Torts, 1004; Wannell *v.* Kim, 57 Mo. 479; Hubbard *v.* Briggs, 31 N. Y. 518; White *v.* Merritt, 7 N. Y. 352; Weed *v.* Case, 55 Barb. 534; Williamson *v.* Raney, 1 Freem. 112; Allen *v.* Hopson, 1 Freem. 276; Dooley *v.* Jennings, 6 Mo. 61; Bree *v.* Hollbech, Dougl. 655; Broom's

Leg. Max. 743 ; State Bank *v.* Hamilton, 2 Ind. 457 ; Oldham *v.* Bentley, 6 B. Mon. (Ky.) 428 ; Oberland *v.* Speiss, 45 N. Y. 169 ; Nelson *v.* Luling, 46 How. (N. Y.) Pr. 365 ; Eames *et al. v.* Morgan *et al.,* 37 Ill. 260 ; Tryon *v.* Whitewash, 1 Metc. 1 ; Hanson *v.* Edgerly, 29 N. H. 343 ; Marsh *v.* Falker, 40 N. Y. 562 ; Nye *v.* Merriam, 35 Vt. 438 ; Collins *v.* Evans, 5 Q. B. 826 ; Ormrod *v.* Huth, 14 M. & W. 664 ; Muller *v.* Eno, 14 N. Y 597 ; Ward *v.* Reynolds, 32 Ala. 384 ; Hinckly *v.* Hendrickson, 5 McLean, 170 ; Smith *v.* Smith, 30 Vt. 139 ; Weiner *v.* Clement, 37 Penn. 147 ; Groff *v.* Hensel, 33 Md. 161.

*W. H. Clopton,* for respondent, cited : House *v.* Marshall, 18 Mo. 368 ; Smith *v.* Richards, 13 Pet. 26 ; Monroe *v.* Pritchard, 16 Ala. 785 ; Medbury *v.* Watson, 6 Metc. 246 ; Glasscock *v.* Minor, 11 Mo. 657 ; Buford *v.* Caldwell, 3 Mo. 477 ; Anderson *v.* Jarvis, 4 Bing. 69 ; Williamson *v.* Allison, 2 East, 446 ; Osgood *v.* Lewis, 2 Har. & G. 495 ; Paisley *v.* Freeman, 13 Ves. 133, and 3 T. R. 51 ; Upton *v.* Vail, 6 Johns. 181 ; 3 Johns. 271 ; 12 Mass. 20 ; 6 Metc. 246 ; Foster *v.* Charles, 6 Bing. 396 ; Corbet *v.* Brown, 8 Bing. 83 ; Freeman *v.* Baker, 5 B. & A. 797 ; Hart *v.* Talmadge, 2 Day (Conn.), 382 ; Young *v.* Hall, 4 Ga. 95 ; Stiles *v.* White, 11 Metc. 356 ; Weatherford *v.* Fishback, 3 Scam. (Ill.) 170 ; White *v.* Wheaton, 3 Seld. (N. Y.) 352 ; Griffith *v.* Ely, 12 Mo. 517 ; Holland *v.* Anderson, 38 Mo. 55 ; Hall *v.* Clark, 21 Mo. 415 ; Irving *v.* Thomas, 18 Me. 418 ; Story on Sales, 293–330 ; Leflore *v.* Justice, 1 Smed. & M. (Miss.) 381 ; Otto *v.* Alderson, 10 Smed. & M. (Miss.) 476 ; Ross *v.* Crutzinger, 7 Mo. 245 ; Ridens *v.* Ridens, 29 Mo. 469 ; Mathews *v.* Elevator Co., 50 Mo. 149 ; Cornell *v.* Jackson, 3 Cush. (Mass.) 506 ; Whitney *v.* Alliare, 1 Comst. (N. Y.) 305 ; Van Epps *v.* Harrison, 5 Hill, 63 ; Hill. on Torts, p. 32, sec. 26 ; Hutchinson *v.* Granger, 13 Vt. 386 ; Hunt *v.* Simonds, 19 Mo. 588 ; Loyd *v.* Hannibal & St. Jo.

R. R. Co., 53 Mo. 509 ; Hill. on New Tr. 225, sec. 40 ;. Hill. on New Tr. 227, secs. 45, 48, 50.

Bakewell, J., delivered the opinion of the court.

This is an action for damages in the nature of a writ of deceit against defendant for making false and fraudulent representations, whereby plaintiff was induced to trade off the stock and fixtures of a grocery store, worth $2,500, for certain lands in Illinois and Missouri.

The petition alleges that plaintiff was induced to make the trade by the false and fraudulent representations of defendant, to the effect that the lands were worth that sum, and that the title to them was at the time well vested in one Newkirk, who was to convey the same.

The lands are clearly shown to have been worth less than $800. The testimony of some witnesses puts them down as worth less than $200. It also appears that Newkirk, at the time, had not the legal title to one of the tracts, and that Newkirk's deed executed to plaintiff was worthless, passing no title. As to the other material facts necessary to establish plaintiff's case, the evidence is contradictory. It consists mainly of the testimony of plaintiff and defendant, who contradict each other.

There was a verdict and judgment for plaintiff for $2,300, and, a motion for new trial being overruled, the case is brought here by appeal.

Some exceptions were taken to the introduction and exclusion of evidence ; but they are not insisted upon, and need no particular notice.

The appellant relies for a reversal upon the points that the damages are excessive, and that the court erred in granting an instruction at the instance of plaintiff, and in refusing certain instructions asked by defendant.

The only instruction given for the plaintiff was as follows :

" The court instructs the jury that, if they believe upon the evidence that the plaintiff was, on or about September

2, 1869, the owner of a grocery store in the city of St. Louis, worth a large sum of money, and that defendant did falsely and fraudulently represent to plaintiff that the lands described in plaintiff's petition were good and arable lands, and worth, respectively, from $8 to $25 per acre, and that the title to the said lands in Missouri was vested in one John V. Newkirk; and if they believe that the lands were not good, arable lands, and were, at the time of such representations, of little or no value, and that the title to the said Missouri lands was not in said Newkirk's hands, so as to enable him to convey the same to plaintiff; that said lands were distant from plaintiff's place of residence; and that defendant claimed special knowledge of said lands, and that plaintiff relied on defendant's representations as to character, value, and title of said lands, and that said representations were the material inducement to an exchange made by plaintiff of his grocery store for said lands, and that said Hewitt was benefited by said false and fraudulent representations, they will find for the plaintiff, and assess his damages at an amount equal to the difference they may find between the value of said grocery store, wares, good-will, and fixtures, and the said lands, at the time of said exchange."

The following instruction was given at the instance of defendant.

" The court instructs the jury that, if they believe from the evidence that defendant made no false and fraudulent representations to plaintiff of the value or character or title of the land specified and described in the petition, then they will find for defendant."

These were all the instructions given in the case. The following, asked by defendant, were refused by the court:

1. " If the jury believe from the evidence that there was no acquaintance between plaintiff and defendant prior to the transaction in controversy; that by reasonable diligence

and inquiry, by exercising common and reasonable care, he could have ascertained the title, value, and character of the lands in question; and that defendant was in no manner interested with Newkirk in the purchase of the grocery, then they should find for defendant.''

2. " The court instructs the jury that, if they believe from the evidence that defendant sold the lands in question to one Newkirk, for $800; that Newkirk afterwards traded them with plaintiff; and that defendant was in no manner interested with said Newkirk in the purchase or trade with plaintiff, then they will find for defendant."

3. " The court instructs the jury that, if they believe from the evidence that the defendant sold the land in question to one Newkirk, for $800; that Newkirk traded the same land with plaintiff, and that with his, plaintiff's, consent, a deed for the Fulton county lands was made direct from defendant to plaintiff, and received and recorded by him; that plaintiff knew that Newkirk was indebted to defendant, and not entitled to a deed for the other land until the $800 note was paid; and that defendant was not interested in the purchase of the grocery from plaintiff, then they should find for defendant."

4. " The court instructs the jury that, if they believe from the evidence that plaintiff was informed, at the time he traded with Newkirk, that the title to the land in question was in Hewitt, and that Hewitt referred him to Mr. Fritchey, from whom he had acquired the land, for information as to character and value of the land, and that Hewitt was in no manner interested in the purchase of said property from plaintiff, then they should find for defendant."

5. " The court instructs the jury that, if they believe from the evidence that defendant did not conspire with one John V. Newkirk to cheat and defraud plaintiff, then they will find for the defendant."

6. " The jury are instructed that, if they believe from the

evidence that plaintiff received the title to the premises in controversy, and has sold and disposed of the same with the knowledge that his title would not be perfect to one of the tracts until he paid to Hewitt the balance of the note of Newkirk, and received the deed, which his attorney had drawn, from Hewitt to him, then they should find for defendant."

7. " The court instructs the jury that, if they believe from the evidence that in the transaction between Newkirk and plaintiff the defendant was no party, and was not interested in the trade, and that if any statements he made as to the quality or value of the land in question was mere loose talk, and that there was no confidential relationship between plaintiff and defendant, nor any prior acquaintance between them, then they should find for defendant."

A judgment will not be reversed for the refusal of instructions, if the instructions given present to the jury a correct and full statement of the law governing the case. The real question presented for our decision is as to the correctness and sufficiency of the instruction given ; and if some of the instructions refused had been correct statements of the law applicable to the case, it would not necessarily follow that it was error to refuse them.

We do not think, however, that any one of the seven instructions refused could have been given without committing error.

A false statement, made with intent to deceive, accompanied by damage, is in all cases a good cause of action.

To entitle plaintiff to recover in this action it was necessary for him to show that defendant made some statement to him in regard to a material fact ; that defendant knew the statement to be false, or, at least, did not know it to be true. As the statements in this case regarded the value and quality of land, they must appear to have been so extreme as to exclude possibility of honest mistake or difference of opinion ; they must be shown to have been relied upon by

plaintiff, and to have been the proximate cause of the trans-action, and that transaction must have resulted in damage to plaintiff. If these facts were shown to the satisfaction of the jury, plaintiff was entitled to recover. The bill of exceptions shows that there was some evidence to each of these points. It is held that, to make a false representation ground for an action of deceit or fraud, it must have been made with intent to deceive (*Joliffe* v. *Collins*, 21 Mo.) ; but it is also held that when, as in this case, the false representation is as to the quality or title of land, it will be considered fraud, however innocently made. *Glasscock* v. *Minor*, 11 Mo.

On the other hand, had there been evidence to satisfy the jury that plaintiff did not rely upon the representations of defendant, or that they were as to facts within plaintiff's own knowledge, or that the false statements were mere expressions of opinion as to matters in regard to which defendant did not profess to have any superior means of forming a judgment, then the plaintiff would not be entitled to recover.

We think the instruction given for plaintiff put the law of the case fairly to the jury ;. and there is nothing here of which defendant can complain. Any inaccuracies in the instruction are favorable to defendant. It was not neces-sary, for instance, that the jury should find that Hewitt derived any benefit from his false representation, and the word " fraudulently " might have been safely omitted.

. Appellant complains, however, that the word " fraudu-lently," in the instruction, is not explained. It was not necessary that the jury should find actual, moral fraud, and the word might have been omitted with safety, but its insertion does not prejudice defendant.

Fraud is so various that it escapes exact definition. As used in this instruction, the word needed no explanation.

All surprise, trick, cunning, dissembling, and unfairness, used to cheat another, is considered fraud. If by fraud is

to be understood, as is said by some, intention to deceive, from expectation of advantage to the party himself or from ill-will to another, then plaintiff might have complained of the use of the word, if the instruction were not his own; but defendant is not damaged by a direction which requires the jury to find, as a condition precedent to recovery, a fact the existence or absence of which is not material to the case.

Appellant's counsel seem to be under the impression that, if plaintiff did not use diligence and avail himself of all the means reasonably in his power to ascertain the value, quality, and title of this land, he cannot recover in this action. This is not the law.

The negligence of plaintiff will not excuse the defendant, where the question is as to real estate, and the facts were peculiarly within the knowledge of defendant, and plaintiff relied on his statement. *Wannell* v. *Kern*, 57 Mo.

The measure of damages is correctly set forth in the instruction given. It is not what plaintiff made or lost by the exchange, but it is the difference between the value of the property sold, at the time of the sale, if the property had been as represented by defendant, and its value as it was in point of fact. *Langdon* v. *Green*, 49 Mo. On the evidence, we cannot clearly see that the verdict was excessive; but that was a question properly before the trial court, upon which it has passed, and into which we should not look unless in a case so glaring as to be beyond all possibility of doubt.

There is, however, one fact presented by the record to which we must advert; and that, not merely for the purpose of affixing a note of disapprobation to the practice, of whose disadvantage it is a flagrant instance, but because we are satisfied that, in this instance, it worked substantial wrong and injury; and it will be the ground of the reversal of this judgment and the remanding this cause for a new trial, though it is the only material error that we find upon the record.

It appears, from affidavits filed in support of the motion for a new trial, that the jury were sent out of the court-room, with counsel, for the purpose of hearing the argument, and that the closing address of counsel to the jury was not made in the presence of the court. The consequence, in this instance, was that remarks fell from the lips of one of the counsel which would not have been permitted in the presence of the court.

We are satisfied that the immediate occasion of this unfortunate circumstance was the reprehensible practice of sending the case to be argued out of court. This is a custom which, in the interest of justice in this State, ought to be abandoned. It is as much the duty of a judge to preside over the argument of a cause to a jury as it is to listen to the evidence. His interference in either case may be needed at any moment, and great injustice may be, and is often, done and suffered by his absence at that critical time. If it be said that the case is not sent out to be argued without consent, we answer that consent is worthless, because it is extorted. Counsel are in a position that they cannot well refuse such a consent. To do so might prejudice, with the jury, the counsel refusing in this way to accelerate the dispatch of the business of the court. The desire to dispatch business and avoid unreasonable delay to suitors, witnesses, and jurors, and to save costs, is the laudable motive which induces the trial courts in this county to adopt this practice at the end of a protracted trial, when time is needed to do justice to the evidence in the argument of counsel at the close of a long, complicated, and warmly-contested case. But the administration of justice requires that all proceedings in the trial of a cause should be held in the presence and under the control of the proper presiding officer of the court. If the legal facilities for the dispatch of legal business are not what the rapidly increasing commerce and population of this county require, that is a matter for the Legislature.

If time were really saved by this practice, it would have that point, at least, in its favor; but we question much if time is not rather lost.

The object of this proceeding is, we have said, to save time. In the pursuit of this object, after a cause has been under examination for several days, the counsel are sent into another room to discuss the evidence before the jury. Occasion is thus given for an irregularity which is calculated to defeat the whole purpose for which the trial was had. No preventive can be applied to such deviations from propriety. At best they may be corrected by the grant of a new trial, and thus this attempt to save time will serve to illustrate the homely maxim, "the more haste the less speed."

The case at bar is a signal illustration of the truth of these remarks. A case involving the protracted examination of many witnesses, patiently tried, without substantial error up to that point, must be sent back for retrial, at great cost of time and money, for errors which the court allowed itself no opportunity to obviate or correct, committed after every declaration of law in the case was made.

The action of counsel during the closing argument was strongly insisted upon as a ground for new trial in the court below, and is also urged here. The record shows affidavits, filed in support of the motion for a new trial, tending to show that counsel for plaintiff pursued a line of argument before the jury which no court would have tolerated for a moment, and that the jury were thus inflamed by statements in regard to witnesses, and to material facts in the case, that were wholly unwarranted by the evidence. It is true that counter-affidavits are filed, but enough appears uncontradicted, in regard to the course of argument to the jury which counsel for plaintiff permitted himself to pursue, to satisfy us that the substantial rights of defendant—rights in which he would have been protected had the argument been conducted in the presence of the court—were seriously

invaded in the concluding argument. Against this, in the absence of the court, defendant had no redress. We cannot say how far the verdict of the jury may have been influenced by these illegal proceedings ; and we think it was error in the court to request counsel to argue the cause to the jury out of the immediate presence of the court, or even to permit them to do so. It was error to overrule the motion for a new trial filed herein, based upon this action of the court, and the immediate consequence of this action, as shown by the affidavits which make part of the record. For these errors the judgment of the Circuit Court is reversed and the cause is remanded, to be tried anew in accordance with this opinion. The other judges concur.