### ED GOODMAN v. THE STATE.

No. 3006.    Decided November 30, 1904.

**1.—Murder—Provoking the Difficulty—Charge of Court.**

Where the State's testimony disclosed the fact that the defendant and deceased had on the evening before the homicide a misunderstanding, and that deceased accused him of taking his money; and that, on the following day, defendant returned to the home of deceased armed, in company with his father, mother and wife, and after some conversation between these and deceased's wife about another matter, said that whoever said that he got that money was a G—d d—n lying son of a bitch, in the meantime reaching for his pistol and drawing it

upon deceased, who then started towards him, it was proper to charge on provoking the difficulty.

**2.—Same—Charge of Court—Manslaughter—Self-Defense.**

Where the defendant's testimony showed that the deceased attacked the former with a knife and thereupon a difficulty ensued in which defendant shot and killed the deceased, the court should have charged both on manslaughter and self-defense; and the latter should have been disconnected from a charge on provoking the difficulty.

**3.—Same—Evidence—Extraneous Crime—Motive.**

Where a statement of the wife of deceased was admitted in regard to the theft of money by defendant from deceased, which the witness saw and afterwards related to her husband who charged the defendant with said theft, who resented it and which led to the homicide, and said statement was introduced in evidence for the purpose of showing intent, knowledge, or motive, it did not violate the general rule that testimony of extraneous crimes is inadmissible.

**4.—Same—Evidence—Declaration of Third Parties.**

Where a statement imputed by one of defendant's witnesses to a State's witness, to the effect that the latter denied that he had made certain defamatory statements about the younger daughter of defendant's mother, was attempted by the State to be contradicted by its said witness, and this was matter occurring between said witnesses in the absence of defendant and which was in no way binding upon him, it was error to admit the same in evidence against defendant on his trial for the murder of deceased.

**5.—Same—Absence of Judge During Part of Trial.**

Where the district judge, sitting in a case of homicide, absented himself from the bench for eight or ten minutes during the trial, going to his home some 300 or 400 yards distant, the judgment of conviction will be set aside and a new trial granted.

Appeal from the District Court of Erath. Tried below before Hon. W. J. Oxford.

Appeal from a conviction of murder in the second degree; penalty, eight years' imprisonment in the penitentiary.

The opinion states the case.

*Riddle & Keith,* for appellant.—In the case at bar, it will be observed that the killing occurred because the deceased accused the defendant of theft of money, according to the State's theory of the case; the case as made by defendant shows the killing to have occurred because the defendant denied the theft of money from the deceased, when the deceased publicly accused him of same: Testimony showing that the deceased accused the defendant of stealing money from his pocket, was perhaps admissible, but to allow the State to go further, and by an eye witness prove all the harrowing details of a stealthy theft committed at night time by the defendant from the pockets of deceased while he was asleep in defendant's house as his guest, in support of such charge, we think is unwarranted by any rule of law, and we know that it was highly prejudicial to defendant's rights before the jury, because of the manner in which it was used in argument before the jury. Fore v. State, 5 Texas Crim. App., 251; Williamson v. State, 13 Texas Crim. App., 514; Crass v. State, 30 Texas Crim. App., 480.

The court erred in permitting the witness Omar Bost, over the objec-

tion of the defendant, to testify in the presence and hearing of the jury to the details of the conversation which he had with Mrs. B. F. Goodman at the residence of his father concerning a report about Mrs. Goodman's daughter Virdie, in the absence of and out of the hearing of the defendant.

The testimony complained of is "res inter alios acta" concerning a matter about which the homicide did not occur, and was not admissible against the defendant for any purpose whatever. Wright v. State, 37 Texas Crim. Rep., 627; Roberts v. State, 17 S. W. Rep., 358; Barry v. State, 37 Texas Crim. Rep., 302.

On the proposition of the court's charge on provoking the difficulty: Casner v. State, 2 Texas Ct. Rep., 559; McCandless v. State, 57 S. W. Rep., 672; Pollard v. State, 7 Texas Ct. Rep., 548; Grayson v. State, 57 S. W. Rep., 809; Williams v. State, 10 Texas Ct. Rep., 709.

When the defendant's testimony raises in his behalf a clear issue of self-defense, it is error for the court to qualify and limit a charge in his behalf presenting this issue by a charge on his having provoked the difficulty, even though the State's case may authorize a charge on provoking the difficulty; defendant is entitled to have his defense submitted to the jury untrammeled and unqualified, and a verdict directed for him if the jury find his state of facts to be true. Drake v. State, 8 Texas St. Rep., 645; Brice v. State, 10 Texas Ct. Rep., 28; Vann v. State, 45 Texas Crim. Rep., 8 Texas Ct. Rep., 949.

On proposition of extraneous crimes: Weaver v. State, 10 Texas Ct. Rep., 747.

On proposition of the trial judge vacating the bench: Bateson v. State, 10 Texas Ct. Rep., 211.

*Howard Martin,* Assistant Attorney-General, for the State.

DAVIDSON, Presiding Judge.—Conviction for murder in the second degree, the punishment assessed being eight years imprisonment in the penitentiary. Prior to the homicide, deceased and his wife had spent the night with appellant and his wife. All these parties had been raised in the same neighborhood and had been friends from their childhood. They were young married couples. Subsequent to this occasion, the wife of deceased had stated that after their retirement on the night in question, appellant had arisen from his bed and taken some money from the pants of the deceased. On the evening prior to the homicide, appellant and his wife had visited deceased and his wife at their home. Before leaving, the matter came up for discussion, and deceased insisted appellant had taken the money and called his wife to sustain him, which she did. Appellant said that if he got it he did not know it. The next morning, on which the homicide occurred, appellant was going to the county-seat, accompanied by his father. About the time they were ready to start, the mother and wife of appellant concluded that they would go to the residence of Mrs. Bost, and investigate some re-

ports in regard to her daughter and another young lady, to the effect that they had been seen near a school-house with one of the boys in the neighborhood, and also that some notes had passed between Mrs. Goodman's younger daughter and this boy. They stopped at Bost's, and had a conversation with Omar Bost. From there they went to the home of deceased, and the matter about the girls came up for discussion. After discussing the matter for awhile, the conversation was suddenly changed to the subject of the theft of the money. In regard to this matter, the testimony is widely variant and contradictory. Some of this will be here reproduced: The widow of deceased was asked, while testifying: "Q. What did Mrs. Goodman say? (Referring to the mother of appellant). She said, 'Maggie, Omar said that was a lie about them girls being down there in the thicket,' and I says, 'Omar did tell me they was down there,' and I says, 'here is Quinn, ask him.' We had then stopped inside of the fence, and Quinn (deceased) just walked outside then, and says, 'Well, I can't help what Omar says, they was down there.' And Mr. Goodman (the old man) says, 'Well, Quinn, you want to be certain that you tell the truth;' and Quinn says, 'Well, I think I can tell the truth anywhere,' and Ed (defendant) just spoke up and says, 'Whoever says I got that money is a God damn lying son of a bitch.' And Quinn says, 'Whoever says you didn't, is another one.' Q. What did Ed Goodman do when he used these words, say over again what Ed Goodman said. A. He just says, and when he said it, he put his hand in his hip pocket and says, 'whoever says that I got that money is a God damn lying son of a bitch,' and Quinn says, 'whoever says you didn't is another one.' Then Ed pulled his pistol and climbed over behind the seat in the wagon, he drew his pistol and my man run up under the pistol and pushed it up and went right in under it, and got up in the wagon, and they fought there standing in the wagon, a little minute, and he pushed my man out backwards; they both went out, and my man fell on his all-fours; Ed got up first and slammed his hand on the back of his neck and shot him before he could get up." This witness testified that appellant pulled his pistol as he was getting up from the wagon-seat. This is the State's testimony as to the immediate facts. Mrs. Mintie Goodman testified, in regard to matters just stated, after repeating in substance what the former witness said in regard to the conversations about the girls: Quinn remarked in regard to his connection with the story about the girls, "I told Maggie not to say anything about that. And then Mrs. Goodman up and told what Maggie had told me about Roy and Virge writing scandalous notes. And Maggie says, 'I never said it,' and I says, 'Yes you did tell me that,' and she says, 'I thought you promised me that you would not tell that,' and I says, 'Yes, I know that I did, but when you told a whole lot on Ed that wasn't so I couldn't keep from it.' And Maggie says, 'I saw that with my own eyes.' And I says, 'You never done any such thing.' Quin says, looking up at Ed, 'No man can say that.' Ed says, 'Say what, that I didn't get that money.' And Quinn said, 'yes.' Ed says, 'I never done anything of the kind.' And Quinn

says, 'You are a God damn lying son of a bitch,' and came towards the
wagon and got up on it. Ed was sitting sideways on the wagon seat at
the time. Quinn jumped in the wagon, and Ed got over behind the
seat, and Quinn kept hitting at Ed and shoved him out of the wagon
backwards, and Edgar fell on the ground on his back, and Quinn fell out
on top of him, and Edgar pushed him off to one side, with his right
hand, and shot him with his left hand." The parties referred to here as
Quinn and Maggie are deceased and his wife; Edgar is the appellant.
Perhaps this is a sufficient statement of the evidence to bring in review
the criticism of the charge of the court in reard to provoking the dif-
ficulty.

Appellant contends that the evidence does not suggest the theory of
provoking the difficulty and cites several cases. We are of opinion that
the evidence for the State suggested this theory; that for the defendant:
suggesting the provocation and all the aggravating circumstances on
the part of deceased. This being true, appellant was entitled to a charge
on manslaughter and self-defense: both of which were given. The
criticism of the charge on self-defense is that it is qualified by a charge
on provoking the difficulty. While under the facts the court was justi-
fied in giving a charge in regard to provoking the difficulty, yet it
should have been given distinctly and separately from the charge on
self-defense, and not as a qualification of self-defense. Under the facts
stated, appellant was entitled to a clear cut charge on his right of
self-defense, disconnected and apart from the issue of provoking the
difficulty. Vann v. State, 8 Texas Ct. Rep., 949; Drake v. State, 8
Texas Ct. Rep., 645; Price v. State, 10 Texas Ct. Rep., 28. Upon an-
other trial, the court should so charge the jury as to present the issue
of self-defense and that of provoking the difficulty clearly and distinctly
and apart from each other, so that appellant may have the full benefit
of his testimony untrammeled by the State's evidence.

A bill of exceptions was reserved to the admission of the detailed
statement by the wife of deceased in regard to the alleged theft trans-
action, and authorities cited to show that this character of testimony
was not admissible because it was an extraneous crime, if a crime. The
authorities cited go to the extent of sustaining appellant's contention
as a general proposition; but these cases make the exception where the
extraneous crime or matters are introduced for the purpose of show-
ing intent, knowledge, or motive. The evidence here was introduced
on the question of intent and motive, and in our opinion, was not error.

Another bill of exceptions was reserved to the introduction of the
testimony of Omer Bost. Mrs. Goodman, mother of defendant, had
testified, as did one or two other eye-witnesses, to the effect that she
stated to deceased and his wife that Omer Bost had told her that he
did not tell the story in regard to the girls being seen near the school-
house or in the thicket with a boy. Omer was introduced to contradict
this statement. One of the grounds of objection was, that it was mat-
ter occurring between Mrs. Goodman and Omer Bost, in the absence of

defendant, and was in no way binding upon him. We are inclined to the opinion that this evidence should have been rejected. It was a matter occurring between third parties in appellant's absence, and which was in no way binding upon him.

It is further shown by bill of exceptions, that during the trial, the trial judge, while one of counsel was addressing the jury, absented himself from the bench and the court-room, going to his residence, some 300 or 400 yards distant, and was absent about eight minutes; that the case proceeded in his absence, the daughter of the judge occupying the seat made vacant by him during his absence. We do not care to enter into a discussion of this proceeding further than to hold it error, and refer to Bateson's case, 10 Texas Ct. Rep., 208. The fact that the young lady presided over the court did not meet the requirement of the law,— the trial judge should be the presiding officer; she was in nowise authorized to act as a judge, not even in a de facto capacity.

For the errors discussed, the judgment is reversed and the cause remanded.

*Reversed and remanded.*