### Connie Anderson v. The State.

No. 3258.    Decided May 23, 1906.

**1.—Robbery—Corroboration—Inducement.**

Where upon trial for robbery the chief State's witness and defendant's alleged accomplice, on cross-examination admitted that for a time he denied all participation in the robbery, and the State was then permitted to show that the witness made a similar statement to that testified to by him on the trial, that he, admitted his connection with the robbery and detailed to the officers the same circumstances concerning it as testified to by him on the trial, but it was shown in that connection that he made this statement confessing the details of the crime, subsequent to an inducement offered by the officers, such testimony of corroboration was not admissible.

**2.—Same—Absence of Judge During the Trial.**

Upon a trial for robbery where the record showed that the trial judge was absent from the bench on two occasions during the argument of counsel, for from five to twenty minutes, and out of the hearing and sight of the proceedings, a conviction could not be sustained.

Appeal from the District Court of Bastrop.    Tried below before the Hon. Dyer Moore, Special Judge.

Appeal from a conviction of robbery; penalty, twenty years imprisonment in the penitentiary.

The opinion states the case.

*Page, Miley & Price,* for appellant.—On question of corroboration of State's witness:  Sanders v. State, 21 S. W. Rep., 259; Conway v. State, 26 id., 401; Ezell v. State, 65 id., 370.

*J. E. Yantis,* Assistant Attorney-General, for the State.

HENDERSON, Judge.—Appellant was convicted of robbery, and his punishment fixed at confinement in the penitentiary for a term of twenty years, hence this appeal.

Prosecutor, Joe Evans, testified substantially that he was a fisherman by occupation, and was camped on the Colorado River, some three miles above the town of Bastrop; that on the day of the alleged rob-

bery he had gone down the river to Bastrop, and sold some fish; that he had gone home to his camp, arriving there late in the evening, and finding he needed some tobacco and other things returned to Bastrop. There he got his tobacco and other articles, and started back to camp, about 8 o'clock. Shortly after leaving the town, and in the suburbs, he was set upon by two persons who knocked him down and robbed him of some $11; that it was dark and he could not see the parties, but heard them talking. After the robbery he came to town, notified the officers, and R. E. Buchanan (the accomplice) was arrested that night. At the scene of the robbery Evans found some cuffs or collars which had the initials of Buchanan on them, and they were afterwards identified as his property.

For the conviction of appellant the State relied mainly on the testimony of the witness Buchanan, who stated that he and appellant were sitting in a saloon, when they observed prosecutor, Evans. Appellant told him that Evans had money and said that they should rob him. They followed him out in the suburbs and robbed him. As to the identification of appellant being one of the parties engaged in the robbery, the corroborating testimony relied on by the State was to the effect that appellant and Buchanan were seen together shortly before the alleged robbery, and were seen together afterwards. Furthermore, Evans stated on the trial that he recognized appellant as one of the robbers by his voice. Appellant's theory of defense was the want of identification, and that the State's case, as made out by the accomplice, was not sufficiently corroborated. This is a sufficient statement of the case to discuss the assignments.

On the trial the State introduced the evidence of Buchanan, to the effect that he made to the sheriff and others the same statement that he testified to on the trial concerning the circumstances of the robbery. This was objected to by appellant on the ground that it was not made in the presence of appellant, and appellant could not be bound thereby. According to the bill of exceptions (which was reserved in the statement of facts and is in rather a confused condition) it seems that said testimony was admitted, or the witness allowed to corroborate himself in this manner, because he had been attacked in the cross-exabination; that is, he stated, in response to counsel during cross-examination, that he had at first told lies about the robbery; denied having been engaged in the robbery; claimed he was innocent. It is also made to appear in this cross-examination that this witness was induced to turn State's evidence, by being informed by the officers that it might go better with him and he would get less punishment, if he would tell the truth about it. They also stated to him that they had found his cuffs or collars, and had sufficient evidence against him. As to the admission of this character of testimony, we understand the rule to be that where a witness has been impeached by showing that he made other and different statements in regard to the matter than that testified to by him on the trial, he can be corroborated by showing

that he made similar statements to that testified to by him, recently after the occurrence; or where evidence has been introduced tending to show that the testimony given by the witness has been recently fabricated; or that he had been induced to testify under improper influences or motives, he may be corroborated by showing that he made a similar statement to that testified to by him, before any inducement was offered to so testify. Sanders v. State, 31 Texas Crim. Rep., 525; Riojas v. State, 36 Texas Crim. Rep., 182; Jones v. State, 38 Texas Crim. Rep., 118. No testimony was introduced by the appellant showing that the accomplice had made a statement, as to the facts attending the robbery different from those testified by him on the trial. Appellant merely showed by this witness on cross-examination that for a time he denied all participation in the robbery. In this attitude of the case, the State was permitted to show that he made a similar statement to that testified to by him to the sheriff and others; but in that connection, it was shown that this statement was subsequent to some inducement offered by the officers, as that the case would go lighter with him, if he told the truth about the transaction, and he was also told that they had evidence against him. He then, according to the testimony, admitted his connection with the robbery and detailed to them the same circumstances concerning it testified to by him on the trial. However, this was after the inducement held out to him by the officers, and it does not occur to us that, under the rule authorizing this character of testimony, the same was admissible. Walter White v. State, 2 Texas Ct. Rep., 362; Welch v. State, May 9, 1906. Besides, we do not believe the contingency arose from the cross-examination of this witness for him to thus corroborate himself. He made no different statement about the transaction. He merely denied being a party to it at all, claimed that he was innocent; and this he persisted in until after he was led to believe it would go lighter with him if he would testify against his accomplice.

Appellant also insists that this case should be reversed because of the absence of the judge during a part of the argument by the State's and appellant's counsel. In connection with the bill of exceptions a number of affidavits are filed. The witnesses state that the judge was absent on two occasions during the argument: once while State's counsel was arguing the case, and once while appellant's counsel was speaking. They variously estimate the time as to the first absence from five to twenty minutes; and as to the last absence from two to five minutes. It is shown that on both occasions the judge retired to the water-closet some seventy-five feet from the courtroom, and out of the hearing and sight of the proceedings. The judge, in his affidavit, shows that he was absent on both occasions to answer a call of nature, and he states that he believes he was not absent on the first occasion more than five minutes and on the last not more than two; that during a part of his absence on the first occasion, he stopped to talk with a grandjuryman, which detained him, but he was close by the courtroom at the

time. We have held in a number of cases that the judge during the proceedings attending the trial of a criminal case could not absent himself from the courtroom out of the sight and hearing of the jury. Bateson v. State, 46 Texas Crim. Rep., 34; Goodman v. State, 83 S. W. Rep., 196; Carney v. State, 85 S. W. Rep., 7; McLaughlin v. State, 87 S. W. Rep., 158. In Scott v. State, 85 S. W. Rep., 1060, it was held that it was not reversible error for the judge to absent himself from the courtroom about a minute, he being within about fifty-five feet of the jury, and nothing having occurred during the time which could have militated against the rights of the accused. In this case the affidavits show that the judge was absent, according to his own statement, the first time about five minutes; and according to the other affidavits he was absent as long as twenty minutes. It appears, according to the affidavit of one of the counsel, that he missed the judge from the courtroom, and began looking for him to see where he had gone; that he expected to be called on to address the court in a few minutes on the law of the case, and was at a loss to understand why he was not present; that failing to find him in the courtroom, he went out into the corridors of the courthouse, and was unable to find him. He then returned and took his seat. In about fifteen minutes he again went to look for him, and saw him standing in the hall, some ten feet from the door of the courtroom talking to a member of the grand jury. At the point where he found him the judge was out of sight and could not see what was transpiring in the courtroom, nor could he hear what was going on therein; nor was he in a position to hear and control said case. As to the length of time the judge was absent from the courtroom, there is some difference between this case and the Scott case, supra. There he was absent a minute, and here he was absent at least five minutes the first occasion, according to the judge's statement. In matters of this sort it is extremely difficult, when we depart from the true rule, that the judge should always be present or suspend the proceedings during his absence, to draw the line, if we make a departure at all. As was said in Bateson's case, supra, "This question has been before a number of tribunals in the various States of the Union, and the current of authority in criminal cases is one way, with a very few exceptions; that is, in the trial of felony cases, especially in capital cases, the absence of the judge from the courtroom during the trial will constitute cause for reversal in case of conviction. This presence of the judge, who is the presiding genius of the court, is construed not to mean absolutely within the courtroom, but so near as to be within sight and hearing of the proceedings; that is, in such a situation as to retain control of all that transpires during the trial. Otherwise, there is no way by which the court can be informed as to any errors which may occur, for as to these he does not get his information by proxy, but he must judge of the matter by his own ear and his own eye. If by absence, though temporary, the reins escape him and he

loses that control and supervision of the court which is so necessary to safeguard every right of a defendant in a particular case, and a conviction follow, it will be set aside, notwithstanding no injury can be pointed out."

It is not necessary to discuss the other assignments, but for the errors pointed out, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Brooks, Judge, absent.