Ex parte JOHN H. CONRADES; JOHN H. STRO-BEL, Sergeant at Arms, Respondent.

In Banc, December 24, 1904.

1. **HABEAS CORPUS: Transfer From Court of Appeals.** Where one of the judges of a court of appeals considers the decision therein in a habeas corpus proceeding to be in conflict with prior decisions of the Supreme Court or of a court of appeals, the case must be transferred to the Supreme Court, just as any other cause may be transferred. Under the constitutional amendment, the power to transfer is not limited to appealable cases "with an original transcript therein," but those words are to be considered as a direction as to how the transfer is to be made in cases to which they are applicable.

2. ——: ——: **Nature of the Cause.** The language of the constitutional amendment concerning transfer of causes from a court of appeals to the Supreme Court does not make the transfer depend upon the nature of the cause of action, but upon a determination of one of the judges of the court of appeals in which the action is pending that the decision therein is contrary to a previous decision of the Supreme Court or of one of the courts of appeals.

3. ——: ——: **All Causes.** The language of the constitutional amendment requires a transfer to the Supreme Court of all causes and proceedings, without exception, in which one of the judges of the court of appeals hearing the same deems the decision therein in conflict with a prior decision of the Supreme Court or of a court of appeals.

4. ——: ——: **Reason.** The reason for a transfer to the Supreme Court of a habeas corpus case is the same as for the transfer of any cause, to-wit, in order that the decisions of the appellate courts may be kept in harmony.

5. ———: **House of Delegates: Final Adjournment: Ouster of Jurisdiction.** The fact that the House of Delegates by which petitioner was adjudged to be in contempt because of his refusal to present before it the books of a private corporation has expired by limitation of law and final adjournment, does not oust the Supreme Court of jurisdiction to determine the legal right of such House of Delegates to commit him for contempt, in a habeas corpus case first begun in a court of appeals, and by that court transferred to the Supreme Court. The cause is in the Supreme Court on the certification of the Court of Appeals, in order that harmony in the decisions in all the appellate courts may be preserved, and the duty of the Supreme Court in the premises is not limited by the interest of the petitioner in the result.

6. ———: ———: **Resolution: Private Papers.** The House of Delegates of St. Louis, by resolution, appointed a committee and empowered it to "carefully and fully investigate the books, records and accounts in the several departments wherein returns are made of taxes in relation to merchants' or manufacturers' license or personal tax, and to subpoena witnesses and to send for persons and papers and to administer oaths," etc. *Held*, that even if a municipal assembly or either house thereof has power to punish for contempt, this resolution did not authorize the committee to compel the secretary or any other officer of a private corporation to produce before said committee "the sale book, cash book, general ledger and recapitulation books" of said company, nor any other of its private books, for the resolution contains no direction to investigate the private affairs of any private person, or class of persons, or corporations, and hence the House of Delegates had no authority to punish him, as for contempt, for refusal to obey the order of the committee to produce the private books of his company.

## Habeas Corpus.

Transferred from St. Louis Court of Appeals.

PETITIONER DISCHARGED.

*Judson & Green* and *W. E. Fisse* for petitioner.

(1) The writ in this cause was duly issued from the St. Louis Court of Appeals. The petitioner had the right to test the legality of his arrest. Lowe v. Summers, 69 Mo. App. 637. Though the writ of habeas

corpus, as an additional guaranty for human liberty, may be issued by a judge as well as by a court, it is none the less a decision of the court when the case is decided by a court. It was, therefore, a "proceeding" within the constitutional mandate, Constitution,. article 6, section 6 of amendment. The duty of certification lies in every "cause or proceeding," whether the decision is made in the original or appellate jurisdiction of the court of appeals. It is immaterial that there is no appeal in habeas corpus in this State; there is no appeal from a court of appeals to this court. 25 Am. and Eng. Ency. of Law (2 Ed.), 155; 1 Ency. of Pl. and Pr., p. 112; In re Williken, 4 Wall. 112; In re Fulkes, 157 Mo. 125; Ex parte Lucas, 160 Mo. 218; Ex parte Carter, 166 Mo. 604. This court must decide the whole case, and not merely reconcile the conflicting opinions of the judges of the court of appeals. Sutton v. Cole, 155 Mo. 206. (2) The underlying question in this cause—whether the power to try and punish by fine and imprisonment for contempt could be or was, in fact, lawfully vested in the House of Delegates of the Municipal Assembly of St. Louis—was not considered in the court of appeals, that court following Ex parte Dunn, 9 Mo. App. 255, assuming the existence of the power. But the correctness of the Dunn decision is now before this court for determination. The power of punishing contempt is essentially judicial and therefore can not be lawfully vested in a municipal legislature. 1 Smith's Modern Law of Municipal Corporations, sec. 304; Rapalje on Contempts, sec. 2; Langenberg v. Decker, 131 Ind. 471, 16 L. R. A. 108; In re Sims, 54 Kan. 1; Ex parte Mason, 43 Fed. 510; Interstate Commerce Com. v. Brimson, 154 U. S. 447, 155 U. S. 3; Cooley's Constitutional Law (7 Ed.), 453; Yard's Case, 10 Pa. Co. Ct. 41; State ex inf. v. Shepherd, 177 Mo. 205; In re Whitcomb, 120 Mass. 118. In England a town or city council had no power, without express act of Parliament, to make an ordinance with penalty of im-

prisonment or to commit for contempt of its authority. Grant on Corporations, 84-86. But in this country, under our constitutional distribution of powers, the Legislature can not delegate such authority. Whitcomb's Case, supra. (3) The American doctrine of contempt is further illustrated by the recognized limitations upon the legislative power of punishment for contempt, therein radically differing from the comprehensive power of the English Parliament. Kilbourn v. Thompson, 103 U. S. 168, overruling Anderson v. Dunn, 6 Wheat. 204; Whitcomb's Case, supra. For the modification of the English law of contempt as to colonial legislatures, see: Keiley v. Carson, 4 Moore P. C. 63; Stockdale v. Hansard, 9 Ad. & El. 1. (4) This inability to delegate the judicial power of punishing contempts to municipal bodies and administrative commissions is so universally recognized in this country that it has led to the general adoption of statutes providing for the reference to the courts of the refusal to testify or produce papers before such non-judicial bodies, and for the enforcement by such judicial authority of the production of such testimony. Interstate Commerce Act, sec. 12; secs. 102 and 104, R. S. U. S., construed and enforced in the case of In re Chapman, 166 U. S. 661; secs. 854 to 856, Civil Code of New York; Statute of 1855, chap. 20, p. 24, as to investigations before the city council of New York; these sections construed and applied in In re Vantine, 12 How. Prac. 507; People ex rel. v. Van Tasel, 64 Hun 434, 135 N. Y. 638; In re Cole, 38 N. Y. Supp. 955; People ex rel. v. Webb, 23 N. Y. 324; 16 Albany Law Journal, 96; In re Pillsbury, 56 How. Pr. 299; Acts of Pennsylvania 1885, p. 36; In re Sims, 16 Pa. City Ct. 353; In re Yard, 10 Pa. City Ct. 41. In reference as to grand juries: R. S. 1899, secs. 2499, 2500. (5) But in the case at bar there is not even an express delegation of this extraordinary authority to the Municipal Assembly. Even assuming that the charter could have conferred such an extra-

ordinary power, it is sought in the present case to establish such power by implication from the charter power to send for persons and papers and administer oaths to witnesses. The power to try and imprison for contempt must be expressly granted, and can not be inferred even from the power to summon witnesses and the production of papers. 1 Dillon on Municipal Corporations (4 Ed.), 246; Brown v. Davidson, 59 Iowa 561; Noyes v. Byxbee, 45 Conn. 382; In re Mason, 43 Fed. 510; In re Palmester, 58 Kan. 809; Ex parte Mallinkrodt, 20 Mo. 493; Ex parte Huron, 58 Kan. 152, 36 L. R. A. 822; Rutherford v. Holmes, 65 N. Y. 368; Watson v. Nelson, 69 N. Y. 536. The principle has been applied in this State to the case of contempts in courts of inferior jurisdiction. Ex parte O'Brien, 127 Mo. 477; 1 Dillon on Municipal Corporations (4 Ed.), 446. (6) The charter of St. Louis, though constitutional in the sense that it was framed under constitutional authority, without legislative intervention, must in like manner as a legislative charter be in harmony with and subject to the Constitution of the State. McQuillin on Municipal Corporations, sec. 44; Ewing v. Hoblitzelle, 85 Mo. 64; State ex rel. v. Field, 99 Mo. 352; Badgley v. St. Louis, 149 Mo. 122. It follows that if the charter can be construed as authorizing the assumption of the judicial power of punishing for contempt by the Municipal Assembly, then this section of the charter so construed is violative of the Constitution. First. Of article 3, distributing the powers of government. Whitcomb's Case, supra; State ex inf. v. Washburn, 167 Mo. 680; Ex parte O'Brien, 127 Mo. 477. Second. Of section 30 of the Bill of Rights in denying due process of law. Whitcomb's Case, supra. Third. As applied to the case at bar, in violation of section 11 of the Bill of Rights, protecting against unreasonable searches and seizures. Boyd v. United States, 116 U. S. 616. (7) This invasion of personal liberty and security would also be violative of the due process of law guar-

anteed by the Constitution of the United States, and also violative of the rights secured by the fourth and fourteenth amendments in the privileges and immunities of the citizens of the United States against unreasonable searches and seizures. Guthrie's Lectures on the 14th amendment, pp. 58 to 64; O'Neill v. Vermont, 144 U. S. 361; Boyd v. United States, 116 U. S. 616; Adams v. People, 24 Sup. Ct. Rep. 372. (8) If the foregoing positions are correct, the case of Ex parte Dunn, 9 Mo. App. 255, decided in 1880 before the exhaustive discussion of the subject of contempts of legislative assemblies in Kilbourn v. Thompson, 103 U. S. 168, overruling Anderson v. Dunn, and which held the ordinance in question valid, was wrongly decided. But even that decision, which was the only judicial precedent attempting to justify such an exercise by a municipal body of judicial functions, did not warrant the demand for the books of the petitioner's company, nor his attachment and arrest for their non-production, for the following reasons: First, the powers of the committee were clearly limited by the resolution of appointment. It called only for the investigation of the books, records and accounts in the several departments of the city government wherein returns of taxes were made. No authority whatever was given by the House to the committee to examine the books and private papers of citizens. Such an extraordinary power must be given by express terms, and could not be created by intendment. Even if it be conceded that the Municipal Assembly could lawfully give to itself the power of punishing for contempt, no presumption of rightful conduct can be indulged in to support its proceedings. Ex parte O'Brien, 127 Mo. 477. Second, the ordinance authorizes the issue of the writ of *duces tecum* only when a committee is authorized to make investigation of any question or matter in which the House may lawfully take action. Neither the House nor the Municipal Assembly could lawfully take action on the alleged incor-

rectness of the returns made for taxation by individual or corporate taxpayers. It had no jurisdiction whatever for investigation and punishment of tax dodging. Third, the case of Ex parte Dunn was clearly distinguishable, as there the investigation related directly and expressly to the conduct of a receivership, in a litigation to which the city was a party, and the book called for was one kept by a public official, that is, by the clerk of the receiver in such litigation. (9) But even if it is conceded that the resolution could be read as expressly authorizing the investigation of the private books and papers of corporation and individual taxpayers in order, in the language of the preamble, "that the tax-dodgers and schemers may be compelled to pay their full share and the dishonest be brought under the searchlight," the compulsory production of the books and papers of any taxpayer would be directly accusatory to the party thus summoned to produce, and such compulsory summoning of the party accused and compulsory production of his books and papers would be directly violative of constitutional guarantees, both State and Federal, against self-incrimination. Sec. 23, Missouri Bill of Rights; 5th amendment to U. S. Constitution; and see points 6 and 7, supra. In such case of a directly accusatory proceeding, the special plea of privilege against self-incrimination required of a witness is not required from the accused party. He is not required to put such a stigma upon himself. Ex parte Green, 86 Mo. App. 216; Boyd v. United States, 116 U. S. 616; Counselman v. Hitchcock, 142 U. S. 547; State v. Young, 119 Mo. 520. It is immaterial that the penalties to be incurred would have been individual or corporate. State v. Hardware Co., 109 Mo. 118.

*Peter T. Barrett* and *Thomas P. Bashaw* for respondent.

(1) A certification under the constitutional provision is tantamount to an appeal. This court must

proceed, if at all; as it would proceed had it acquired jurisdiction by appellate process. In fact, it differs from an appeal or writ of error only in this, that the case comes here at the instance of one of the judges, and not on motion of either of the parties. Taken altogether, the section is in the nature of an exception to the general constitutional provision that no appeal to the Supreme Court shall be had from a judgment of the court of appeals. It relates only to cases where, ordinarily, appellate jurisdiction may be invoked; and in construing it this court has several times held that it will hear and determine the cause as if it had original jurisdiction by appeal. Sutton v. Cole, 155 Mo. 206; Sternberg v. Levy, 159 Mo. 617. But under our law, there is no such a thing as an appeal in a habeas corpus case; and it has been so from the beginning. Howe v. State, 9 Mo. 682. (2) At the hearing in the court of appeals petitioner's discharge was sought upon three grounds: First, that the committee had acted outside the powers conferred on it by the resolution of the House of Delegates, in undertaking to compel the petitioner to produce the books and papers of the Conrades Company; second, that the investigation undertaken by the committee of the House of Delegates, by virtue of which it sought to compel the production of the books of the Conrades Company, was not related to any function or duty of that House, and, therefore, it had no power to compel the attendance of witnesses or the production of papers; and, third, that the books and papers petitioner was required to produce before the committee were private papers and that neither the committee nor House had any right to compel their production for that reason, and for the further reason that the resolution and the proceedings thereunder were of a *quasi*-criminal character and therefore petitioner had a right to refuse to produce the books and papers to furnish evidence against himself, and that, too, without

claiming that their production might furnish evidence tending to incriminate him or to subject him to a criminal prosecution. All these points were considered, and ruled against the petitioner by the majority opinion of the court of appeals, rendered by Judge GOODE. And as far as these contentions are concerned we might rest them upon that well-considered opinion and the authorities therein cited.

ROBINSON, C. J.—This proceeding by habeas corpus was originally instituted in the St. Louis Court of Appeals, on application of John H. Conrades, Jr., as petitioner, asking to be released from the custody of John H. Strobel, sergeant of arms of the House of Delegates of the city of St. Louis, by whom he had been arrested and was being detained under a warrant charging him with contempt of that body, for refusing to submit books and papers of his corporation for inspection by a committee of said House of Delegates.

The return of the respondent, to the writ commanding him to produce the body of petitioner, set out at great detail all the proceedings of the House of Delegates, and of its committee appointed to conduct the investigation which led up to and resulted in the petitioner's arrest and detention; also the several clauses of the city charter and ordinances showing the authority claimed by respondent for each step taken by said House of Delegates and its committee, and all the facts necessary to a full undertaking of the status of both petitioner and respondent, and their attitude to each other in this procedure.

The facts of the case are in no wise disputed, and the case was submitted to the court of appeals upon a motion for a judgment upon respondent's return, and that court in a majority opinion written by GOODE, J., ordered that the petitioner herein be remanded to the custody of respondent, while BLAND, J., wrote a dis-

senting opinion, and being of the opinion that the view expressed in the majority decision of that court was contrary to the decisions of this court, asked that the cause be certified to this court for final adjustment and determination. The order of certification was thereupon made and the proceeding in that court was stayed and the petitioner permitted to give bail pending the final action of this court.

Before, however, we shall proceed to the consideration of the issues raised by the pleadings, as the cause was heard and determined in the court of appeals, we are asked to consider first the question of our own jurisdiction and authority in the premises, which is now challenged by respondent. By him it is said that the certification of a cause or proceeding under the provisions of the constitutional amendment relating to the St. Louis and Kansas City Court of Appeals, which provides that "when any one of said courts of appeals shall in any cause or proceeding render a decision which any one of the judges therein sitting shall deem contrary to any previous decision of any one of said courts of appeals, or of the Supreme Court, the said court of appeals must, of its own motion, pending the same term and not afterward, certify and transfer said cause or proceeding and the original transcript therein to the Supreme Court, and thereupon the Supreme Court must rehear and determine said cause or proceeding, as in case of jurisdiction obtained by ordinary appellate process; and the last previous rulings of the Supreme Court on any question of law or equity shall, in all cases, be controlling authority in said courts of appeals," is tantamount to an appeal in that cause or proceeding, and should be limited to causes and proceedings of an appealable nature; and, also, that, as in our State there exists no right of appeal in habeas corpus to this or any court, this court is wanting in authority, under the circumstances, to hear and determine this proceeding in habeas corpus here by certifica-

tion. The purpose of the framers of the constitutional amendment to exclude this court's jurisdiction in any cause or proceeding originating in the courts of appeals, respondent contends, is clearly indicated by that portion of the constitutional amendment which provides that "said cause or proceeding *and the original transcript therein* shall be certified and transmitted to the Supreme Court . . . and by said court must be reheard and determined as in case of jurisdiction obtained by ordinary appellate process," respondent's contention being that, as a condition precedent to a valid order of transfer in any cause or proceeding by the court of appeals to the Supreme Court, there should be first an appealable case, "with an original transcript therein," to be transmitted to the Supreme Court.

Respondent also insists that notwithstanding the general language used in this constitutional provision, its manifest purpose is to include those causes and proceedings only wherein a decision has been rendered which is a final judgment, finally determinative of the right of the parties thereto, but not to mere orders or judgments in habeas corpus remanding a petitioner to the custody of the party by whom it is alleged he has been unlawfully detained, as was done in this instance, since such orders are in no sense final judgments, determinative of the rights of any one to the proceeding; and as illustrative of his position, he asks us to consider the situation of this petitioner, who had he so chosen, might immediately have renewed his application for discharge before this court, or any judge thereof, where it would have been acted upon in utter disregard of how his first application before the court of appeals had been considered or disposed of. We think respondent has been led into the error of his present contention by giving too much weight and importance to a mere minor detail in a general plan formulated for having causes certified from the courts of appeals to

the Supreme Court for final determination and disposition, and also by leaving out of sight and consideration the principal and controlling purpose and feature of said constitutional amendment, as the same has been declared by the decisions of this court.

If respondent's construction of the purpose and object of this constitutional amendment should be adopted, making a valid order of transfer depend upon the precedent condition of an appealable cause in the court of appeals, with an original transcript therein to be transmitted to this court, the necessary consequence must be to exclude from its operation all causes and proceedings over which either of the courts of appeals may exercise original jurisdiction.

If this be done, we must ignore and hold for naught, not only the plain, emphatic and comprehensive language of this constitutional provision, but we must condemn a long and uniform course of practice in this court to the contrary, and reject as erroneous all that we have heretofore said upon the question as to the principal and controlling purpose and object of said amendment, which is, "to secure uniformity of decisions between the courts of appeals and this court, and between the courts of appeals among themselves." [State ex rel. v. Hickman, 150 Mo. 626.] If uniformity in the opinion of our appellate courts is to be preserved (and nothing is more conducive to the power and influence of our courts with the people, and of more importance to the rights of a citizen, than that such should be a fact), it can only be attained by requiring that every kind and character of cause or proceeding that may reach said courts of appeals for consideration, be certified to some final tribunal where all adverse or conflicting decisions as to the law of the case in said courts of appeals, may be adjusted and determined. Instead of this particular provision of this constitutional amendment, "said court of appeals must, of its own motion, pending the same term of court and not after-

wards, certify and transfer said cause or proceeding *and the original transcript therein*" (upon, which respondent has placed much stress and emphasis), being read and considered as a limitation upon the duty and authority of the courts of appeals in the matter of certifying certain causes and proceedings to this court, we think it should be read and considered rather as a simple direction to those courts, as to how a certification, in causes and proceedings of the character therein designated (those having original transcripts therein), is to be accomplished and completed, without in anywise affecting the general and comprehensive language of the amendment, which provides that all causes and proceedings in either of the courts of appeals shall be transferred to the Supreme Court "when any one of said courts of appeals shall in any cause or proceeding render a decision which any one of the judges therein sitting shall deem contrary to any previous decision of any one of said courts of appeals, or of the Supreme Court, the said court of appeals must, of its own motion . . . certify and transfer said cause or proceeding to the Supreme Court," etc.

The general plan and purpose of an act or constitutional provision should never be permitted to become sacrificed by a construction that may be given to some minor detail found in the elaboration of such general plan, except when the result of the existence of the detail makes the operation of the general plan impractical of successful execution; and besides, courts should be slow to put, by way of construction, limitations upon language so plain and comprehensive as that found in this constitutional provision, except when driven thereto by the most obvious reasons for such action (a condition not present here). To adopt the view contended for by respondent, the jurisdiction of this court in certified cases would be made to depend, not upon the expression of dissent by a judge of one of the courts of

appeals that the decision of the majority sitting therein is deemed contrary to some previous decision of said court of appeals, or of the Supreme Court, but upon the nature of the cause in which the dissent is expressed.

To respondent's further contention that the purpose of this amendment was to include those causes and proceedings only for certification wherein a decision has been rendered in one of said courts of appeals which is a final judgment, final determination of the rights of the parties thereto, and that an order or judgment in habeas corpus remanding a petitioner to the custody of the party by whom he was detained, as in the present instance, was not such a judgment, we might content ourselves by simply saying, the Constitution reads otherwise, and has included every cause or proceeding, without exception, in which a decision shall be rendered in either of the courts of appeals which any one of the judges sitting therein may deem contrary to any previous decision in said courts of appeals or the Supreme Court. This comprehensive language covers a proceeding in habeas corpus, regardless of what may be thought of the proposition of whether an order and judgment in such proceeding is or is not a final judgment.

The reason for having such proceedings certified here under this general constitutional provision is as necessary and as apparent in proceedings by habeas corpus as in any cause or proceeding originating in the courts of appeals, namely: that the decisions in such proceedings may be kept in harmony with the decisions of this court, if a reason should be thought necessary to support such plain language as we find in this constitutional mandate.

That no appeal has been provided in proceedings by habeas corpus is, of itself, a most excellent reason why such proceedings should have been required to be certified to this court by the court of appeals if a decis-

ion therein has been rendered which is out of harmony with a controlling decision or decisions of this court upon the questions therein involved.

Assuming that this court may hold that it had jurisdiction of this cause as originally certified to it, respondent presents the following preliminary question, that said jurisdiction so acquired by this court has been lost, or should no longer be asserted, because of the fact that since said certification of the cause here by the court of appeals, where it was originally begun, the session of the Municipal Assembly of the city of St. Louis has expired by charter provision, and by *sine die* adjournment, and that by reason of said fact, the petitioner now stands discharged by operation of law, and further, that any judgment which might now be rendered in the cause herein would be a fruitless one, and its further consideration in this court be in the nature of a moot-court proceeding. If the proper construction of the charter provision relating to the sessions of the Municipal Assembly of the city of St. Louis be, as respondent asserts, that all pending legislation and proceedings therein dies with the expiration of the session and that the right of the House to further deal with the petitioner, in the matter of his contempt, is at an end, and if it be also true, that it is not now possible, should petitioner be remanded by the judgment of this court, for him to purge himself of contempt by appearing before said committee, that fact would not oust this court of jurisdiction, or relieve it of the duty imposed by the constitutional amendment to rehear and determine the cause as certified to it.

Unlike ordinary cases that reach this court for final determination, this cause is not here upon the motion or at the instance of either of the parties concerned therein, but it is here by reason of the fact that one of the judges of the court of appeals wherein the proceeding originated, deemed the decision rendered in said

cause by a majority of said court contrary to a previous decision of this court, and as the object and purpose of the constitutional amendment, under which this cause was certified here, is that uniformity in the decisions of all the appellate courts of the State be preserved, a rehearing and determination of this cause at this time, as in ordinary causes, is not to be likened to a moot-court proceeding because of the fact alone that the judgment rendered may be fruitless so far as it may effect the present right of the petitioner.

As this cause is not in this court at petitioner's instance or on his motion, his present want of interest in the result of our deliberation (if such is the fact) can not lessen our duty of bringing into harmony with our own decisions and opinions, all decisions of all our appellate courts, certified to us for that purpose.

This brings us to the consideration of the cause upon its merits, which as before said, will be determined upon the facts set up in respondent's return, that in no wise are questioned by petitioner.

By said return it is shown that the House of Delegates on October 30, 1903, adopted the following resolutions, duly submitted by one of its members:

"Whereas, it is generally claimed in public and private that the city of St. Louis is being systematically robbed of its just resources in the way of personal and other taxes; and

"Whereas, the city much needs at the present time her just dues in order to properly meet the extra demands being made upon her in these days of commemorations and celebrations and that each citizen may do his part, and that the tax-dodger and schemer may be compelled to pay their full share, and that the dishonest be brought under the searchlight.

"Therefore, Be it Resolved, That the Speaker be empowered to appoint a special committee of five members of this House (the first named being the chairman) to fully and carefully investigate the books, records and

accounts in the several departments wherein returns are made of taxes, either personal, real or upon *ad valorem* basis, in relation to merchants' and manufacturers' license or personal tax, and that such committee be empowered to subpoena witnesses and to send for persons and papers and to administer oaths, and if necessary to employ one or more attorneys, whose compensation shall not exceed $350 per month each; a clerk who shall be an expert accountant and bookkeeper and perform such duties as the committee may elect, whose compensation shall not exceed $200 per month, to aid in the discharge of their duties and report their findings and recommendations as soon as possible.''

In said return it is also shown that a committee of five was duly appointed under the terms of said resolution, and that by virtue of the authority thereof, said committee began the work assigned it, and in the course of such work and duty did issue its subpoena *duces tecum* to the petitioner herein, then secretary of the J. H. Conrades Chair Company, a corporation organized under the laws of this State and doing business in the city of St. Louis, commanding him to appear before said committee and then and there to testify concerning certain matters pending before said committee, and to bring with him the sale books, the cash book, general ledger and recapitulation books of the said J. H. Conrades Chair Company, showing the sales from June 1, 1902, to June 1, 1903, which said subpoena was personally served by the respondent as sergeant at arms of the House on said J. H. Conrades, Jr., on the twenty-third day of February, 1904; that on the twenty-fourth day of February, 1904, said J. H. Conrades, Jr., appeared before said committee, pursuant to the command of said subpoena, but declined and refused to produce and bring before said committee said books and papers mentioned in said subpoena, although admitting that said books and each and every one of them were in his possession and under his control, giving

as his ground for said refusal that said committee had no right to compel him to produce said books and papers for examination by it. That upon the refusal of said petitioner to produce said books and papers, or to permit said committee to examine the same, said committee thereafter, on March 25, 1904, made its report to the House of Delegates, acquainting the House with the refusal of said petitioner to produce said books and papers, and his denial of the right of said committee, or the House of Delegates, to require or compel him to comply with said demand, and asking its Speaker to deal with him according to law; that said House adopted said report and directed its Speaker to deal with said petitioner, in accordance with law; that thereafter the Speaker issued a warrant commanding respondent, as sergeant at arms of said House, to arrest said petitioner and him safely keep, so that he may have his body before said House of Delegates on March 29, 1904, to answer for contempt for having failed to obey the process of said committee, in this, that he had failed and refused to produce before said committee for examination and inspection, certain books and papers called for by it; that pursuant to the commands of said warrant, respondent arrested said petitioner on the first day of April, 1904, and while holding him under said warrant, this writ of habeas corpus was duly served upon respondent.

In said return are also found set out with much particularity all the preliminary steps in the proceedings of the House and of the committee, which led up to and resulted in the arrest and detention of petitioner, with a recital of all those provisions of the city charter and ordinances purporting to give authority for the proceedings taken by the House of Delegates, and all actions taken by the committee in pursuance thereof, and all other facts necessary to a full understanding of the relation of petitioner and respondent to each other in the original proceeding as in this.

In our view of the case, it is sufficient at this time to say, that upon the face of the return filed by respond-ent herein, it is shown that the petitioner was unlaw-fully restrained of his liberty, since the committee ap-pointed by the House had no authority, under and by virtue of the resolutions pleaded, to compel the pro-duction for inspection and examination of the private books and papers of a private business corporation of the city, and in so determining many of the questions that have been raised and discussed in the elaborate briefs of the learned counsel filed herein, becomes un-necessary of consideration; such as the proposition boldly asserted and forcefully presented by the counsel for petitioner that the power of punishing for contempt is essentially judicial and can not be invested in a mu-nicipal legislature, and much less in a committee of that body, and also, that if it be assumed that the charter of the city of St. Louis could have conferred this ex-traordinary power upon the Assembly, still it is not to be implied from the power alone to send for persons and papers and to administer oaths to witnesses, and many other like interesting questions, which, as above said, will, at this time, be unnecessary to discuss, in the view we have taken of the committee's authority and power under the resolution of October 30, 1902.

If it be agreed that the legislative department of St. Louis, acting within its proper sphere, is a co-ordinate branch of government, and as such is inde-pendent of the courts in all matters committed to its jurisdiction and discretion by the charter under which it exists, and that while acting within its constitutional and charter powers, as such legislative body, it may punish for contempt, under the same circumstances that the State Legislature would be authorized so to do, still under the circumstances disclosed in respondent's re-turn, the House of Delegates, we think, was wanting in authority to punish, as for contempt, the petitioner for his failure to produce for examination and inspection

the books and papers of the J. H. Conrades Chair Company, in his care and custody, to the committee of the House appointed under the terms of ·the resolution of October 30, 1902, above set out.

By that resolution, the speaker of the House of Delegates was empowered to appoint a committee of five of its body, "to fully and carefully investigate the books, records and accounts in the several departments of the city, wherein returns are made of taxes," and as an aid to the accomplishment of its work, the committee by said resolution was empowered "to subpoena witnesses and to send for persons and papers and to administer oaths," etc. You will search in vain to find in this resolution a direction or a command, by the House, to its committee appointed (either in direct words employed, or by any fair inference that may be drawn therefrom), to investigate the private affairs of any private persons, or class of persons, or corporations. All the power the committee herein had was such as it derived from the above resolution. That was its charter of authority, its delegation of power, the extent of and· the limitation upon its duties; and so the question of the power and authority of the House of Delegates, in the matter of investigations of the character in question, so much discussed by counsel, is of no concern now, since the petitioner here is held for contempt for his refusal to obey the orders of the committee, and not those of the House of Delegates. If by the direct terms of this resolution, or from the reasonable inferences that flow from them, the committee was not empowered to investigate into the private affairs of business corporations of the city (such as the one petitioner controlled and had the management of), then whether or not the House of Delegates had or had not authority to authorize such an investigation, or whether the House may or may not have had the authority to itself have conducted such an examination, is not involved here, and we must deal now alone with the committee, and consider of its

authority and power in the premises under the resolution by which it derived its birth.

Whatever may be thought to be the purpose of the House of Delegates in adopting this resolution authorizing the appointment of the committee in question, as that purpose may be conjectured from a reading of the preamble thereof—be that purpose to compel the tax "dodgers and schemers" of the city to pay their just share of taxes, or be that purpose to bring "the dishonest" of the community under the "searchlight of investigation;" or if its purpose was, as respondent's counsel is able to discover it, "that of gathering information to enable the House to devise more effective means for raising the necessary revenue for the needs of the city by additional legislation," or what not—the actual authority given and duty imposed upon the committee by the terms of the resolution in question are plain, simple and explicit, and that authority so given is not enhanced or enlarged by reason of the charter provision of the city or the ordinances passed in pursuance thereof, set out in respondent's return, and upon which his counsel places so much importance.

Why discuss, in view of the facts of this proceeding, the scope and limitation of the power and authority of the House of Delegates of the city of St. Louis (in the matter of prosecuting investigations in which the city's interests are involved) under that provision of the city charter, upon which so much reliance is placed by respondent's counsel, which provides: "The assembly of either house shall have power to compel the attendance of witnesses and the production of papers relating to any subject under consideration and in which the interests of the city are involved, and shall have power to call upon any proper officer of the city of St. Louis to execute such process," etc. (sec. 31, art. 3, city charter); or why

consider the provisions of the following ordinances passed by the assembly in pursuance of said above charter power: "Whenever either House of the Municipal Assembly . . . shall by resolution authorize any of its committees to make investigation of any question or matter on which either house may lawfully take action, and shall empower such committee to send for persons and papers, such committee shall thereupon have authority to issue writs of subpoenas and of subpoenas *duces tecum,*" etc. (sec. 1314, Rev. Mun. Code, 1901), except it be to find from the ordinance that a committee appointed by the House of Delegates to make investigations, and authorized to send for persons and papers, will have, when thus empowered, the additional authority to issue writs of subpoena and subpoenas *duces tecum?*

To say that the committee appointed by the House of Delegates had the power and authority to issue writs of subpoenas and subpoenas *duces tecum,* or to go further and say that that authority involves as a necessary incident, the additional power to compel obedience to the writ by the witness, in no way affects the question involved here, which is, the right of a committee of the House of Delegates of the city of St. Louis, appointed to do a particular work and perform a special duty, that is to say, "to fully and carefully investigate the books, records and accounts of the several departments (of the city) wherein returns are made of taxes . . . and report their findings and recommendations as soon as possible," to call up a private citizen of the community and compel him to open up for inspection the private books, papers and accounts of a private business corporation under his control and management.

The authority to send for persons and papers and to issue subpoenas and subpoenas *duces tecum,* implies at most, only the right to compel the attendance of the witness, and the production of books and papers in his possession, necessary to a lawful inquiry, within

the authority of the acting body   that may be germane and pertinent to the subject of investigation.   Limited in its delegated authority to the particular duty of investigating the books, etc., of the departments of the city wherein returns are made of taxes, the committee exceeded that authority when it sought to compel the petitioner to give testimony, or to produce books and papers for its inspection, that in the very nature of things could not be considered pertinent or germane to its work in hand, or to the delusive pretense, suggested by counsel, of gathering information for remedial legislation in the contemplation of the House of Delegates.

If, under the authority to investigate the books, records and accounts of one of the departments of the city, a committee appointed by the House of Delegates for that purpose, can ask for and compel the disclosure of all the private books of a business corporation or of the private citizen, then the constitutional guarantees against unreasonable search and seizure, and self-incrimination, become as things of fancy before the overshadowing authority of the numerous city councils throughout the State in their effort to gather information to aid them in the matter of contemplated legislation.

Let it be conceded, as counsel for respondent asserts in justification of the action of the conduct of the committee herein, that the House of Delegates had the right to appoint a committee ''to gather information to enable the House to devise more effective means for raising the necessary revenue for the needs of the city by additional legislation,'' our answer to the assertion is, that if the House of Delegates did intend, or did appoint this committee with that end in view, it put the limitation upon the range of the committee's authority to investigate, for that purpose, to that of ''the books, records and accounts in the several departments of the city wherein returns are made of

taxes," and within that limitation it must be confined, since the committee without such authority, limited as it was, had no power to conduct any kind or character of an investigation, or to call before it any one as a witness, however urgent may be thought the necessity for such action by the committee.

Since the action of the committee in the matter of its investigation was beyond the scope of its authority, under the resolution of its creation, the arrest of petitioner for his refusal to comply with its demand to produce the private books of his corporation, was without authority, and his detention under said writ is without lawful warrant. Therefore petitioner should be discharged, and it is so ordered.

*Marshall, Gantt* and *Fox, JJ.,* concur; *Brace, Burgess* and *Valliant, JJ.,* absent.