## WILLIAM S. MURPHY
### v.
### THE PEOPLE, ETC.

| 19 | 125 |
| 72 | 677 |
| 173s | 38 |

1. CRIMINAL LAW—PROTECTION OF BANK DEPOSITORS.—In a prosecution under the " Act for the Protection of Bank Depositors," passed in 1879, neither knowledge of insolvency nor fraudulent intent are necessary to be alleged in the indictment, nor need they be proved on the trial.

2. SAME.—But the allegation of insolvency of the banker is a material and necessary one, is affirmative, and must be established by proof on the part of the people as any other material and necessary averment before a conviction can be had.

3. PRACTICE.—It is irregular, but not ground for reversal, in the absence of evidence that the party complaining is damaged thereby, for the presiding judge to temporarily absent himself from the court room, leaving a member of the bar upon the bench during the progress of the argument to the jury.

ERROR to the Circuit Court of Jackson county; the Hon. DAVID J. BAKER, Judge, presiding. Opinion filed July 12, 1886.

This is a prosecution under the statute passed in 1879 entitled " An act for the protection of bank depositors" which is in the following language : " That if any banker or broker, or person or persons doing a banking business, shall receive from any person or persons, firm, company or corporation, or from any agent thereof not indebted to said banker or broker, banking company or incorporated bank, any money, check, draft, bill of exchange, stocks, bonds or other valuable thing which is transferable by delivery, when at the time of receiving such deposit, said banker, broker, banking company or incorporated bank is insolvent, whereby the deposit so made shall be lost to the depositor, said banker, broker or officer so receiving such deposit, shall be deemed guilty of embezzlement, and upon conviction thereof shall be fined in a sum double the amount of the sum so embezzled and fraudulently taken, and in addition thereto may be imprisoned in the State penitentiary not less than one, or more than three years. The failure, suspension or involuntary liquidation of the banker, broker, banking company, or incorporated bank within thirty days from and after the time of receiving such deposit, shall be *prima facie* evidence of an intent to defraud, on the part of such banker, broker or officer of such banking company or incorporated bank. " Session Laws 1879, page 113, § 1.    The indictment contains two counts.    The first charges that William S. Murphy on the 16th of July, 1884, at and within said county, then and there being a banker, did then and there receive on deposit, from one Samuel Desbarger, the sum of two hundred and fifty dollars in money, said Samuel Desbarger not then and there being indebted to said William S. Murphy, banker.    The said William S. Murphy, banker, at the time of receiving such deposit, was insolvent, whereby the said deposit, the said sum of two hundred and fifty dollars in money, was lost to said Samuel Desbarger, said depositor, and the same then and there feloniously and fraudulently was converted to the use of him, said William S. Murphy, banker.    Second count: that, William S. Murphy, on the 16th day of July, 1884, at and within said county, then and there doing a banking business, did then and there unlaw-

Murphy v. The People.

fully, fraudulently and feloniously receive on deposit from one Samuel Desbarger the sum of two hundred and fifty dollars in money, said Samuel Desbarger not then and there being indebted to said William S. Murphy. Said William S. Murphy at the time of receiving said deposit, said sum of two hundred and fifty dollars in money, was insolvent, whereby the said deposit of two hundred and fifty dollars in money was lost to the said Samuel Desbarger, depositor. This indictment was returned at the August term, 1884. At the December term, 1884, there was a motion to quash the indictment which was overruled. At this term of the court there was a plea of not guilty, and a trial resulting in a failure of the jury to agree. After the jury was discharged defendant applied for a change of venue on account of the prejudice of the people. The attorneys for the people denied the facts set forth in the petition and numerous affidavits both in support of the petition and denial were filed. The court overruled the motion.

At the August term, 1885, a jury was impaneled and a trial had, resulting in a verdict of guilty and fixing the punishment by fine in the sum of $487.40. It appears from an affidavit by the defendant that during the argument of the case to the jury the judge called a member of the bar to the bench and retired from the bench and court room and was absent perhaps fifteen minutes.

Motion for new trial being overruled the case comes to this court by writ of error.

Errors assigned as follows:

1st. The said circuit court erred in overruling the motion to quash the indictment.

2d. The said circuit court erred in denying and refusing the application for a change of venue.

3d. The said circuit court erred in overruling the motion for a new trial and in rendering a judgment upon the said verdict.

4th. The circuit court erred in leaving the bench and court room, and in leaving a lawyer to occupy the bench during his absence and while the case was being finally argued to the jury.

5th. The circuit court erred in admitting improper evidence to go to the jury on the part of the people.

6th. The circuit court erred in giving improper instructions to the jury on the part of the people.

7th. The circuit court erred in refusing proper instructions asked to be given on the part of the defendant.

8th. The circuit court erred in modifying proper instructions asked to be given on the part of the defendant.

9th. The circuit court erred in refusing defendant's challenge to jurors and to the panel.

The following instructions with others were given at the instance of the people and were excepted to by the defendant:

4th. If you believe beyond a reasonable doubt from the evidence that the defendant was engaged in the business of banking, and in such business received on deposit with intent to defraud, from Samuel Desbarger, the sum of $243.70 or any other sum, that at the time such deposit was made said Desbarger was not indebted to defendant, that at the time of receiving said deposit the defendant was insolvent and knew himself to be so, that said deposit or any portion of it was lost to Desbarger, then you should find the defendant guilty.

5th. The court instructs the jury that a depositor of money in a bank is a person who places his money therein for safe keeping.

6th. The court instructs you that while the allegation of insolvency of the defendant at the time of the receipt of deposit of Desbarger is a material allegation, yet if you further believe beyond a reasonable doubt from the evidence that the defendant received said deposit within thirty days before the time of his suspension, then the burden of proof is on the defendant to show that he was solvent at the time of receiving said deposit and that he did not fraudulently convert the same to his own use.

9th. It is not necessary that the prosecution should prove by direct and positive evidence that the defendant was insolvent on the 16th day of July, 1884, or that he knew that he was

insolvent, but it is sufficient if you are satisfied beyond a reasonable doubt from all the circumstances in evidence in the case that he was insolvent at that time, and took and converted the deposit with fraudulent intent.

10th.   It is your province as jurors to say under your oaths, from the evidence, whether or not the defendant William S. Murphy was insolvent at the time he received the deposit of $243.70 from Samuel Desbarger, on the 16th of July, 1884, at the time of his suspension.

The court was asked to give the following instructions on behalf of the defendant, but refused to do so :

9th.   You can not find the defendant guilty unless you are satisfied from the evidence, beyond a reasonable doubt, that at the time of receiving the deposit in the indictment herein mentioned, the defendant was not only insolvent, but also that he knew at the time of receiving such deposit that he was insolvent.

14th.   The court instructs you that if you believe from the evidence that the defendant, at the time he received the deposit of Desbarger (if the evidence shows that he did receive it), had sufficient property, real and personal, if realized upon, to pay all his liabilities, then in law he was solvent ; and if you find from the evidence that defendant was solvent at the time of receiving such deposit, or that he honestly and in good faith believed he was solvent, and that he was the owner of sufficient property to induce that belief in a reasonable mind, then you should find the defendant not guilty.

19th.   In this case it is immaterial as to whether or not the defendant made loans to his brother or other relatives, or whether such loans, if any such are shown, are sufficiently secured or not, except so far as such fact may tend to show what was the value of so much of defendant's property and assets as was made up of such loans; nor will the jury consider any evidence as to what was the purchase price of the property mortgaged as security for such loans, except so far as you may believe that such fact may tend to show the value of such property ; nor should the jury consider any question as to where the money was obtained to purchase such property.

20th.   A quit-claim deed is as effectual in law to convey the title to land therein mentioned as would be a deed with full covenants of warranty if the party making such quit-claim deed had the title when the deed was made; and although portions of the land owned by defendant or by those who mortgaged land to him as security for loans, may have been conveyed to him or them by quit-claim deed, then the presumption is that such deed made a good title, unless it is shown that the party or parties who made such deeds had no title to the lands so conveyed.

Several of defendant's instructions were modified, to which exception was taken, but it is not necessary to set them out at length in order to a full understanding of the objection urged to this action of the trial court.   The court below permitted certain quit-claim deeds to defendant to be read in evidence over the objection of the defendant.

Messrs. SMITH & STEPHENS, Mr. W. J. ALLEN and Mr. W. W. BARR, for plaintiff in error.

Mr. R. J. McELVAIN and Mr. W. A. SCHWARTZ, for defendant in error.

WILKIN, J.   It is urged, first, that the indictment under which defendant was tried is fatally defective in not averring that defendant knew of his insolvency and in not averring fraudulent intent.   " Where the guilty knowledge is part of the definition of the offense it must be averred, but not otherwise."   Wharton on Criminal Law, Vol. 1, Sec. 297.

The intent is not an element of the crime and need not therefore be averred.   The indictment charges the offense in the language of the statute, and under Sec. 408, C. 38, R. S., is sufficient.

We think there is a sufficient compliance with the constitutional requirement in the entitling of the act under which the indictment is drawn.   The motion to quash the indictment was properly overruled.   On the motion of defendant for change of venue many affidavits were filed *pro* and *con.*

Some of these amount to no more than the statement of an opinion that the defendant can or can not have a fair and impartial trial. Others, however, affirm and deny the facts alleged in the petition. Sec. 22, C. 146, R. S., clothes the trial court with a discretionary power in passing upon such motions; he "may grant or deny the petition, as shall appear to be according to the right of the case." There is nothing in this case to show that the discretion has been abused and hence it is not for this court to interfere.

It was no doubt irregular for the presiding judge to absent himself from the court room, leaving a member of the bar upon the bench during the progress of the argument to the jury, but we are not prepared to hold, in the absence of all evidence to show that the defendant was prejudiced thereby, that the case ought for this irregularity to be reversed. The case is distinguishable from that of Meredith v. The People, 84 Ill. 479. In that case the judge was engaged in the trial of other cases. The member of the bar called to preside at the criminal trial having no judicial powers whatever, there was no presiding judge, the judge of the court being incapable of presiding over the trial of two cases at the same time. In this case the absence of the judge was but temporary, and there is no pretense that he was so engaged that he could not at any moment resume the bench and pass upon any question which might arise. The calling of a member of the bar to the bench was of no consequence; the judge, though temporarily off the bench, or even out of the court room, was still the presiding judge at the trial.

The ninth error is not well assigned; there is nothing to show that the court refused to allow defendant's challenge of jurors, or that defendant challenged the panel. It is difficult to tell from the argument, whether the remarks of the judge during the impaneling of the jury are made the ground of exception because they were prejudicial to the defendant, or because they were offensive to counsel; but there is certainly nothing in the record to show that the defendant was not fairly allowed all the challenges he chose to exercise.

It is insisted that there can be no conviction, under the

statute, unless there is an entire loss of the deposit—viz., *all* must be lost.

The construction contended for is supported by no authority, is unreasonable, and would render the statute absolutely nugatory.

It would scarcely be insisted that the indictment must state the exact amount of the deposit.

It is unnecessary to prove the value laid in the indictment unless the precise sum forms the essence of the offense, or is stated as a matter of description. Wharton on Criminal Law, Vol. 1, 613.

The mathematical exactness insisted upon by the defendant in this case as to proof of the loss is never required. The extreme case put by counsel would result in the punishment of the banker for a very small loss, and yet he would be a wrongdoer to that small extent. But let the extreme case (which it is said is the surest way to reach a correct conclusion) be reversed. Suppose the depositor loses all of his deposit except the one half of one per cent., the case presenting all the other elements of guilt, would it still be insisted that there could be no conviction because the *whole* of the deposit was not lost?

This statute is to have a reasonable construction consistent with the rules of the criminal law.

The fourth instruction as to the required proof of value is in conformity with the rules of criminal pleading and evidence and was properly given.

We see no objection to the fifth of people's instructions. It states a correct principle as far as it goes. It is not in conflict with defendant's sixth instruction which goes farther and defines a general depositor, and states the rules of law governing the right of the banker to use the money on such a deposit.

The objection to the ninth instruction raises also the question as to the correctness of the ruling of the court below in refusing and modifying certain of defendant's instructions. That question is, whether or not it was incumbent on the prosecutor to prove that at the time the deposit was received

Murphy v. The People.

the defendant knew he was insolvent. As we have already said, knowledge of insolvency is not made an element of the crime by the statute, therefore it was neither necessary to aver it in the indictment, nor prove it on the trial. It will not do to broadly assert that it is absurd to hold a defendant liable when he did not know the existence of facts making the act criminal. Every intelligent lawyer knows that there are many instances in which the law, by statutes, does so deal with individuals for the good of society. The object of this statute is too manifest to be misunderstood. There is no hardship in requiring a banker who is doing a legitimate banking business to know whether he is solvent or insolvent at the time he received his customers' money on deposit. The uncertainty as to solvency grows out of investments in real estate, or other speculations, not properly belonging to a banking business. We think the ruling of the circuit court was correct in holding that proof of knowledge of insolvency was not necessary to a conviction, and that there was no error in giving the ninth of people's instructions and in refusing and modifying those of defendant which sought to impose that burden upon the prosecution. Bishop on Criminal Procedure, Vol. 1, Secs. 522 and 523; Wharton's Criminal Law, 8th edition, Vol. 1, Sec. 88.

The sixth instruction given on behalf of the people and excepted to by defendant remains to be considered. By it the jury are told that while the allegation of insolvency of the defendant at the time of the receipt of the deposit is a material allegation, yet, if they believe beyond a reasonable doubt from the evidence that he received said deposit within thirty days before his suspension, then the burden of proof is on the defendant to show he was solvent at the time of receiving the deposit. This statute was passed for the purpose of punishing insolvent bankers for receiving deposits, thereby causing loss to the depositor. Insolvency at the time of receiving the deposit is of the essence of the crime, and hence that allegation in the indictment was necessary and material. Sec. 76 of the Criminal Code effectually provides for the punishment of bankers, brokers, etc., who fraudulently

convert to their own use money deposited with them. It is therefore manifest that the legislature intended by this act to reach persons assuming to do a banking business and who, through their insolvency, should cause loss to those intrusting money with them on deposit. Conceding then, as must be done, that the allegation of insolvency is material, it is impossible to discover under what rule of evidence the burden of proof as to it, is cast upon the defendant. The instruction would seem to proceed upon the supposition that the statute made the suspension of the bank within thirty days after the deposit, *prima facie* evidence of insolvency at the time of receiving the money ; but by reference to the statute it will be seen that there is no such provision. An attempt is made in argument to maintain the correctness of the instruction on the ground that the averment of insolvency is within the rule that where the subject-matter of a negative averment lies peculiarly within the knowledge of the other party, the averment is taken as true, unless disproved ; as in indictments for selling liquor or exercising a trade without a license; but the allegation of insolvency is not a negative averment in this indictment. In an indictment for selling liquor or doing any other act which can only be lawful when authorized by a license, the crime consists in the doing of the act, which may be excused by the license. The averment that the excuse did not at the time of committing the act exist, is material but is negative. Here the act made criminal consists in receiving the deposit by the banker when he is insolvent, and the averment of insolvency is as much an affirmative one as that he received the money.

Had the deposit, in this case, been made more than thirty days prior to the suspension, no greater proof would have been required by the people than under the existing state of facts except as to the fraudulent intent. In either case the insolvency of the banker at the time he received the money must be averred and proved by the people before a conviction can be had.

This instruction erroneously placing the burden of proof on the defendant to prove his solvency, and no other instruction in any way correcting this error, the case must be reversed.

C. & A. R. R. Co. v. Lammert.

The third instruction given on behalf of the people, though not excepted to, is equally objectionable, and for the same reasons.

We find no error in the rulings of the court in excluding or admitting evidence, nor do we find any fault with the conviction under the evidence, but leave that branch of the case undiscussed, as the case must again be tried.

For the error appearing in the sixth instruction the case is reversed and remanded.

Reversed and remanded.