J. H. HUGHES v. THE STATE.

No. 1271. Decided January 24, 1912.

Rehearing denied June 26, 1912.

**1.—Intoxicating Liquors—Express Record—Inspection—Local Option—Information—Reasonable—Words and Phrases.**

Where, upon trial of refusing to let the county officials examine the express records pertaining to the shipment of intoxicant liquors, etc., the information alleged that on and about 3 o'clock in the afternoon, on the said date, the same being within the office hours of said express company, at its said office, etc., did then and there unlawfully refuse to permit B to inspect a certain book above mentioned, etc., the same was sufficient although the word reasonable as used in the statute was omitted. Articles 448, 449, 462, Code Criminal Procedure, Davidson, Presiding Judge, dissenting.

**2.—Same—Charge of Court—Misdemeanor Cases.**

Where, upon trial of refusing to permit the examination of express records pertaining to the shipment of intoxicating liquors, etc., no bills of exception were taken to the refusal of the court to submit requested charges, there was no error; the offense being a misdemeanor.

**3.—Same—Argument of Counsel—Discretion of Court.**

Under article 704, Code Criminal Procedure, the question of the regulation, order and length of argument of counsel is within the sound discretion of the trial court, and where no injury was shown in the court's action in limiting the argument of counsel to thirty minutes on each side, in a misdemeanor case, there was no reversible error.

**4.—Same—Ignorance of the Law.**

Under article 14, Penal Code, ignorance of the law is no defense to a prosecution under the Act of August 19, 1910, governing the examination of express records pertaining to the shipment of intoxicating liquors, etc.

**5.—Same—Absence of Trial Judge.**

Where, upon appeal from a conviction of a misdemeanor, the record showed that counsel for both parties agreed that the trial judge might retire from the bench to write his charge, and that in the event he was needed they would send for him; that soon after he was sent for and passed upon the matter submitted to him and again started to retire, when counsel for the defendant requested him to remain and the court replied that he had already agreed to his leaving and then left to finish his charge, when some controversy arose as to the testimony during the judge's absence whereupon he shortly returned and delivered his charge to the jury. Held, that no injury being shown and the lowest penalty inflicted, and the bill of exceptions being defective, there was no reversible error. Davidson, Presiding Judge, dissenting.

**6.—Same—Evidence—Letter.**

Upon trial of refusing to let the county officials examine the express records pertaining to the shipment of intoxicating liquors, etc., there was no error in not admitting in evidence defendant's letter to the sheriff, which was written the next day after the offense was committed, and which invited the officials to examine the express records. Davidson, Presiding Judge, dissenting.

**7.—Same—Constitutional Law—Bill of Rights—Searches and Seizures—Police Regulation.**

The Act of the Thirty-First Legislature approved August 19, 1910, concerning the inspection of express records, etc., is not in violation of the Bill of Rights, section 9 of the Constitution of Texas, and is a due exercise by the Legislature of its police power. Davidson, Presiding Judge, dissenting.

**8.—Same—Absence of Trial Judge.**

While even the temporary absence from the court room of the trial judge, pending a trial, is not sanctioned, yet where no possible injury occurred to the rights of the defendant and none could have occurred, a temporary absence of the judge is not cause for reversal. Davidson, Presiding Judge, dissenting.

**9.—Same—Evidence—Letter—Self-Serving Declaration.**

Where, upon trial of refusing to permit the county officials to examine the express records pertaining to the shipment of intoxicating liquors in local option territory, the defendant offered in evidence his letter to the sheriff written the next day after he had committed the offense, inviting him to examine said records. there was no error in excluding same; besides the contents of said letter were orally in evidence. Davidson, Presiding Judge, dissenting.

Appeal from the County Court of Montague. Tried below before the Hon. A. W. Ritchie.

Appeal from a conviction of refusing to permit the county officials to examine the express records pertaining to the shipment of intoxicating liquors in local option territory; penalty, a fine of $25, and twenty days confinement in the county jail.

The opinion states the case.

*Speer & Weldon,* for appellant.—On the question of limiting argument of counsel: Walker v. State, 22 S. W. Rep., 685; McLean v. State, 24 S. W. Rep., 898.

On question of the absence of trial judge: Bateson v. State, 80 S. W. Rep., 88, and cases cited in the opinion.

On the question of innocent intent: Blair v. State, 9 S. W. Rep., 890; Lyle v. State, 17 S. W. Rep., 425; Rines v. State, 38 S. W. Rep., 1017; Dittforth v. State, 80 S. W. Rep., 628; Miles v. State, 52 Texas Crim. Rep., 561, 108 S. W. Rep., 378; Ward v. State, 61 Texas Crim. Rep., 604, 136 S. W. Rep., 48.

On question of unconstitutionality of law: Ex parte Gould, 60 Texas Crim. Rep., 442, 132 S. W. Rep., 364, and cases cited in the minority opinion.

*C. E. Lane,* Assistant Attorney-General, for the State.

PRENDERGAST, JUDGE.—On December 1, 1910, appellant was prosecuted under the Act approved August 19, 1910, for refusing, on November 24, 1910, to let the sheriff of Montague County examine the express records, pertaining to the shipment of intoxicating liquors, of the Adams Express Company at the town of Sunset in said county, he being agent of said express company at that time and place, and prohibition being in force in said county at the time.

Said Act of the Legislature was passed at the third called session of the Thirty-First Legislature which convened on July 19, and adjourned on August 17, 1910. The Act became effective November 15, 1910.

The evidence is very brief and is without contradiction. It shows that on November 24, 1910, W. G. Bralley, the sheriff and W. W. Alcorn, the county attorney of Montague County, together, went to the office of said express company in said town at 3 o'clock p. m. during office hours of said express company at that time and place. The appellant was therein in charge of the said books and records of said express company at that time. The sheriff then requested appellant to show him the books and records of the express company showing the shipment of intoxicating liquors into Sunset. The appellant refused to let him see them because he had instructions from the express company to let no one examine the books unless they had an order from the court to do so and appellant stated that he would have to do him just like he had done all others. The sheriff then took the appellant's name, the name of the express company and he and the county attorney left. The appellant was the agent of the express company at said time and place and had the books of the company at that point in his possession. The appellant himself substantially testified to all of the above facts. He further testified he did not know the law had been changed from what it was prior to November 14, 1910; that after the officers left his office, he called an agent of the Rock Island railroad who told him that he thought the officers had the right to examine his books which they had demanded to see. He thereupon, the next day, wrote to the county attorney that he had since been advised that the sheriff had the right to examine his books and that if he desired he could then examine them. That he did not intend to violate the law.

He also stated that at that time he had a pamphlet from his express company instructing him about the new law, telling him that his books were subject to inspection by the officers at all reasonable hours, but he claimed that at that time he had not seen the orders. That the auditor of the company, shortly before then, had taken his file or binder out of his office and placed the instructions from his company therein and then returned the file or binder to him, but that he had not actually seen and read it before the officers were there and left. He also admitted that in December thereafter in a conversation with the sheriff he had told him that at the time he demanded the inspection of his books he had a copy of said law in question pasted in the back of one of his books or binders; that neither the sheriff nor county attorney after November 24, had requested him to be permitted to inspect his books. They testified that after appellant refused to let them see his books they secured the information they wanted from some other source.

No complaint by motion, bill, or otherwise was made in the lower court to quash the complaint or information. However, appellant now, complains that the complaint and information are fatally defective in that they do not allege that the request to him to examine his books was made "at any *reasonable* time during office hours." The complaint and information both are very full and explicit and fully allege all of the requisites in section 1 of said Act, except that they do not use the word "reasonable" in the allegations. The particular allegation covering the point is, "that on and about 3 o'clock in the afternoon of the said 24th day of November, 1910, the same being within the office hours of said express company at its said office in the town of Sunset, in Montague County, Texas, the said J. H. Hughes did then and there unlawfully refuse to permit W. G. Bralley to inspect the said books above mentioned, etc." Article 448, Code Criminal Procedure, expressly enacts that an indictment "shall be deemed sufficient which charges the commission of the offense in ordinary and concise language in such a manner as to enable a person of common understanding to know what is meant, and with that degree of certainty that will give the defendant notice of the particular offense with which he is charged, and enable the court, on conviction, to pronounce the proper judgment." Article 449 is that "When a statute creating or defining any offense uses special or particular terms, an indictment on it may use the general which in common language embraces the special term." Article 462 is, "Words used in a statute to define an offense need not be strictly pursued in the indictment; it is sufficient to use other words conveying the same meaning, or which include the sense of the statutory words."

While it might have been better to have charged that the request to examine appellant's books was at a *reasonable* time during office hours, yet, when it was alleged that the time the request was made was at 3 o'clock p. m. during office hours and that the request was made of the defendant then and there, and the evidence shows that he refused,

not because it was not reasonable time, but because his instructions were to refuse such request, the said information and complaint are sufficient.

Appellant asked four special charges. First, that as the evidence was insufficient to warrant a conviction, to find the appellant not guilty. The second that the law, under which he was prosecuted was an infringement of the Constitution and Bill of Rights and, therefore, void and to acquit the appellant. The third that if appellant had reasonable ground to believe he had a right to decline to permit the sheriff to inspect his books to acquit him. And the fourth that it was not the policy of the law to punish a person when the circumstances surrounding a transaction show it was not his intention to violate the law and, therefore, if they believed he had no intention to violate the law in this case and had reasonable grounds to believe his acts were not in violation of the law, or if they had a reasonable doubt of it, to acquit him. Neither one of these charges should have been given. Besides, no bill of exceptions was taken to the refusal of the court to give either of them. The only mention of them in the motion for new trial is, the court erred in refusing to give defendant's special charge No. 1 by him and then No. 2, and then No. 3 and then No. 4. This was entirely insufficient even in a felony case. Ryan v. State and Byrd v. State, recently decided but not yet reported.

In misdemeanor cases, ever since the establishment of this court, and even before, it was so held by the Supreme Court, as shown by Goode v. State, 2 Texas Crim. App., 522: that "If he (appellant) is not satisfied with the charge of the court, he should except to the charge and ask such additional instructions as he may desire and when his instructions are refused should also save a bill of exceptions to their refusal," citing several cases. Again, in Campbell v. State, 3 Texas Crim. App., 34, this court said: "The rule is well settled that in misdemeanors this court will not revise the action of the lower court, unless it is excepted to by the defendant at the time of the trial; and in such cases if he is not satisfied with the charge of the court he should except to the charge and ask such additional instructions as he may desire; and when his instructions are refused should also save a bill of exceptions to their refusal." See also Hobbs v. State, 7 Texas Crim. App., 118; Downey v. State, 33 Texas Crim. Rep., 380; Cole v. State, 28 Texas Crim. App., 536; Loyd v. State, 19 Texas Crim. App., 322, and many other cases to the same effect by this court.

Appellant has some bills of exceptions complaining of the action of the court in limiting the argument on each side to thirty minutes. He shows that the case went to trial at 1:30 p. m. on March 6, 1911; that the testimony was closed by 4:30 p. m. Appellant took up all of his thirty minutes in arguing the law to the court. We understand his contention in the lower court was that the Act under which appellant was prosecuted was unconstitutional. It is not made very clear why he

took up his thirty minutes in argument to the court on the law of
the case. The bills do show, however, that when his thirty minutes
had been taken up by him the court declined to hear him further on
the law, he contending for more time and the court declining to give
it to him for that purpose. The court did, however, offer to give him
additional time to argue to the jury but as he was trying to get the
court to give peremptory instructions to the jury to acquit, he did not
desire to argue to them, but expressly waived his right thereto. An-
other bill shows that after he had concluded his argument, the court
permitted the county attorney to again address the jury in his closing
argument, or rather his bill shows that he excepted to the county at-
torney so doing and the court overruled his objections. His bill does
not state whether the county attorney then argued the case before
the jury or not.

Article 704, Code Criminal Procedure, provides that when a crimi-
nal case is to be argued, the order of argument may be regulated by
the presiding judge but in all cases State's counsel shall have the right
to make the concluding address to the jury. This court has always held
that this matter was in the sound discretion of the trial court and that
unless injury is shown to the appellant this court will not revise the
discretion of the lower court. No injury is shown to the appellant by
the action of the court in these respects in this case.

Article 14, Penal Code, is: "After a law has taken effect no person
shall be excused for its violation upon the ground that he was ignorant
of its provisions." The fact that appellant was ignorant of the law
under which he was prosecuted at the time he violated it is, therefore,
no defense whatever and as the act under which he was prosecuted
does not make his intent to violate it a necessary ingredient he would
be guilty if he violated it, whether he intended to do so or not. The
appellant himself testified that he did not intend to violate the law.
The only possible advantage this would be to the appellant, if it were
admissible at all, would be that the jury would give him a lower pen-
alty. In this case the jury inflicted the lowest penalty under the law.
So that he has no cause of complaint as to these matters.

Appellant complains by his second bill of exceptions, to the effect
that after all the evidence was introduced the court asked counsel for
both sides to excuse him and he would retire from the courtroom, go
down into his office and prepare a charge. This was agreed to by both
of them and it was further agreed that in the event he was needed they
would send for him; that soon after he had thus retired they did need
him and sent for him. He at once returned to the courtroom. The
matter then between the attorneys was passed upon by him and he
again started to leave the room. Appellant's counsel requested him not
to do so and stated that he desired to change his former agreement and
requested the court to then remain in the courtroom. The court re-
plied: "You have already agreed to it and I am going to hold you
to it." Appellant's attorney again requested him to remain which he

declined to do and .went down in the courthouse to his office to continue
the preparation of his charge to the jury. That at one time "when the
court was absent and State's counsel was arguing to the jury, in his
closing argument he stated the defendant had admitted on the stand
that he told Mr. Bralley last December that at the time of the alleged.
offense he had the law pasted in the back of a book or ledger in his
office. Whereupon the defendant's counsel remonstrated with him, that
he was outside of the record and asked him not to argue outside the
record and the State's attorney insisted that he was right and not out-
side of the record and continued his argument. That this took place
at a time when the court was out of the courtroom and after the de-
fendant's counsel had insisted upon his staying in the room and ob-
jected to his going out, to all of which said proceedings the defendant
then and there in open court excepted and tenders this his second bill
of exceptions and asks that the same be approved and ordered filed as
a part of the record herein." This bill was approved by the court.
It will be seen by this bill that the only thing that occurred while the
court was out of the courtroom preparing his charge was as to whether
or not the State's attorney's argument was based upon the testimony
of the defendant. The bill does not show whether the appellant had so
testified or not. It is, therefore, defective to that extent. If we could
look to the statement of facts it would be seen that the State's attorney
was fully correct, not out of the record and that the appellant had
testified as he argued at the time. So that the bill does not show that
the appellant was in any way injured. Besides this, the statement
of facts, without contradiction, and by the appellant's own testimony
was that he was guilty beyond the shadow of a doubt and he could not
have been injured by the court's temporary absence as shown. The
jury gave him the lowest penalty under the law.

The appellant cites us to Bateson v. State, 46 Texas Crim. Rep., 34;
Evans v. State, 46 Texas Crim. Rep., 476; Goodman v. State, 47 Texas
Crim. Rep., 388; Carney v. State, 47 Texas Crim. Rep., 566; Anderson
v. State, 50 Texas Crim. Rep., 134; Williams v. State, 51 Texas Crim.
Rep., 361 and French v. State, 55 Texas Crim. Rep., 538, 117 S. W.
Rep., 848. In the last case cited, the court expressly did not pass
upon the question. The Bateson case, supra, is the leading case on
the subject, holding in that particular case because of the facts thereof,
it was reversible error for the court to be absent under the circum-
stances therein shown. This court in the recent case of White v. State,
61 Texas Crim. Rep., 498, 135 S. W. Rep., 563, in discussing this
question and the said Bateson case, said:

"It is also insisted that it was reversible error for the judge of the
court, during the argument of the case by the attorneys for appellant,
to absent himself from the courtroom, and this without in any way
showing that anything occurred during his absence to the detriment of
the appellant. We are cited to the case of Bateson v. State, 46 Texas
Crim. Rep., 34, 80 S. W. Rep., 88. In that case it was clearly shown

that many things occurred during the absence of the court from the room that were objectionable, and that, if the court had been present, exception would have been made thereto at the time, but that they were prevented from making such objection, because of the absence of the judge, and to have gone and hunted him up would have unduly interrupted the case, and that of itself, and the calling attention thereof to the jury, would have been detrimental to the appellant. What was said with reference to the absence of the judge during the trial in that case must be construed in connection with what was shown to have therein transpired. We do not understand that in this case the temporary and short absence of the judge from the courtroom, when he is in easy access in an adjoining room, would, without any prejudice or injury to the appellant, authorize or justify a reversal on that account alone. The judge should, of course, remain in the courtroom, or in such proximity and view of the jury and parties engaged in the trial that he can at all times be approached, and control the proceedings, and we can not understand why a judge should absent himself from the courtroom and permit the trial to continue. If necessity compels his retirement for any purpose, he should suspend the proceedings until his return. What we say on this point is that, as no injury whatever was shown to the appellant by the judge absenting himself at this time, a reversal of this case would not be authorized on that account alone. Hence there was no error in refusing to grant a new trial on that ground," which we understand to be the correct rule, even in felony cases. See also Scott v. State, 47 Texas Crim. Rep., 568; and Lewis v. State, 15 Texas Crim. App., 647. The Bateson case expressly recognizes the difference on this doctrine between a misdemeanor and a felony case and cites 17 A. & E. Ency., p. 720 on felony cases. On the same page of the same work as to misdemeanors, it is said: "In order for such absence to become reversible error it must appear, not only that objection was made to the judge's failure to suspend the trial (during his absence) but that his absence resulted in some harm to the losing party." To the same effect is 12 Cyc., 522, citing in note 7, Rowe v. People, 26 Colo., 542; State v. Smith, 49 Conn., 376; Pritchett v. State, 92 Ga., 65; Schintz v. People, 178 Ill., 320; Murphy v. People, 19 Ill. App., 125; State v. Porter, 105 Ia., 677; Ermlick v. State, 28 So., 847; Turbeville v. State, 56 Miss., 793; Quidas v. State, 78 Miss., 622; Rutter v. Ter., 11 Okla., 454.

In our opinion, under the circumstances and facts of this case and the way the matter is presented to us, no reversible error is shown because of the absence of the judge in this case.

We would not have it understood by implication even that we approve the absence of the judge from the presence of the jury, counsel and witnesses at any time pending the trial of a case. On the contrary, if error were shown prejudicial to the appellant by the absence of the judge, we would not hesitate to reverse the case. It is the duty of the court to be present at all times while the case is being tried. If

it becomes necessary for him to be, even temporarily absent, he should stop the proceedings and prevent anything from being done until he returns, takes the bench and charge of the case.

The court did not err in excluding in evidence to the jury the said letter written by appellant to the county attorney the next day after the offense was committed. Besides, he testified, without objection, the substantial contents of the letter. Neither did the court err in sustaining the county attorney's motion or objection to this testimony by the appellant: "If either of them had told me they had a right under the law to inspect the books I would have permitted them to have examined the books." All of these matters, if admissible at all, could have had no proper effect on the trial. Appellant was given the lowest penalty. There are no other matters so presented as to require any further discussion of the case.

There being no reversible error shown in this case, the judgment will be affirmed.

*Affirmed.*

DAVIDSON, PRESIDING JUDGE (dissenting).—1. The court absented himself during the trial and went away to his office and out of the courtroom, he states, to write his charge. There came up some question between the attorneys in his absence and they sent for him to settle it. Defendant's counsel then informed the court that he would not further agree to his absence from the courtroom during the trial, but the court replied, "You have already agreed to it now and I am going to hold you to it," and went away. It appears from the record that the court was not present any more during the trial of the case. I refer to Judge Prendergast's opinion for a more complete statement of the matters connected with this transaction. This was not a mere casual absence on account of some matter of urgency but was a deliberate abandonment of the trial and an intentional absence from the courtroom. This was not a court during the absence of the judge within the meaning of the law. Our Constitution provides for and demands that trials be had before a court and not before counsel in the absence of the court. Here the judge abandoned and dissolved the court. There was no presiding officer, only counsel present before the jury wrangling over questions before that jury as to what was or was not testified by witnesses. This, to say the least, is a novel way of holding courts of justice and trying men for life or liberty. My brother Prendergast meets this by stating that "the bill does not show that the appellant was in any way injured. Besides this, the statement of facts, without contradiction, and by the appellant's own testimony was that he was guilty beyond the shadow of a doubt and he could not have been injured by the court's temporary absence as shown. The jury gave him the lowest penalty under the law." If this be correct, then if the statement of facts should show a party guilty he could not complain even though he was tried in the absence of the

judge or out of the courtroom without a presiding judge.  I had thought that our Constitution and laws were enacted to the end that an accused person should be tried before a court presided over by a judge however guilty he may be.  This was such error as ought to require a reversal of this judgment.  Bateson v. State, 46 Texas Crim. Rep., 34; 47 Texas Crim. Rep., 476; 47 Texas Crim. Rep., 388; 47 Texas Crim. Rep., 566; 50 Texas Crim. Rep., 134; 51 Texas Crim. Rep., 361; 117 S. W. Rep., 848.  In 17 Vol. Am. & Eng. Ency. of Law, page 721, I find this: "It has been held that where counsel are sent out of the courtroom to argue the cause to the jury out of the presence of the judge before whom the cause was tried, if improper remarks are made to the jury or either side calculated to prejudice the jury, a new trial should be granted on the application of the party aggrieved, unless it clearly appears that no evil result was produced by these remarks; and the fact that the party aggrieved consented to argue the cause out of the court's presence when requested to do so by the judge trying the cause, does not constitute a waiver of his right to have the argument of the cause conducted in the presence of the court, his consent being practically extorted in such case," citing Brownlee v. Hewitt, 1 Mo. App., 360.  See also State v. Claudius, 1 Mo. App., 551.  This quotation is directly in point.  The difference between the cases in the excerpt and the case made by this record is that in the excerpt the lawyers were sent out of the courtroom to argue the case to the jury, where in the case in hand the court sent himself out and down into his office and was absent during the argument, and refused to stay and hear the case.

2.  The constitutionality of the Act of the Legislature under which this proceeding was instituted is attacked.  The majority opinion passes this without notice as being too insignificant to attract attention. The far reaching consequences of this Act and its unconstitutionality to my mind is of great importance, and appellant's contention should have been sustained.  The Act in question is found on pages 33 and 34 of the Third Called Session of the Thirty-First Legislature.  It provides certain stipulations in regard to shipping through the express companies intoxicating liquors.  After setting out the various matters, which are unnecessary here to mention or notice, this is found in section 1 of the Act:  "Any agent of such express company, railroad company or other common carrier having the custody of any book or books required by this Act of such express company, railroad company or other common carrier to be kept, shall at the request of any person at any reasonable time during office hours produce such book or books for inspection by any officer of the law or any member of the grand jury."  It then provides a heavy punishment from twenty-five to one hundred dollars, and imprisonment in the county jail.  This Act authorizes the indiscriminate overhauling, investigation and inspection of all the books of express companies and other common carriers at the whim, caprice or curiosity of the party requesting the officer to look

into the books. This is such a direct disregard of the rights of our people, their business interests and concerns, and the citizenship of this State that it ought not to be for a moment entertained or sustained. Books of express companies doubtless may be brought into court or investigated in a proper manner and at a proper time under order or direction of the court when it becomes necessary to the ends of public justice or the enforcement of public or private rights, but the law points out how such matters shall be done. It was never intended but prohibited by the Constitution, as I understand it, that the business matters of the citizenship of this country—whether corporate or individual—should be placed at the whim and caprice of curiosity seekers. This investigation can only be had when it becomes a matter of public concern or in aid of private rights, and then under such safeguards as will not violate the Constitution with reference to the seizure of property and due process of law. The property of the citizenship of this country may not be seized or taken except by due process of law, and that law provides that the seizure shall not take place except under the solemnity of legal safeguards. I do not care to enter into further discussion of this matter. The question here raised was so thoroughly and exhaustively discussed and so ably decided in an opinion by Judge McCord in Ex parte Gould, 60 Texas Crim. Rep., 442, that I deem it unnecessary to undertake to add to what was there said. I do not feel that anything I could say would strengthen that opinion. I also refer to Ex parte Conrades, 85 S. W. Rep., 150; the same case, 185 Mo., 411; State ex rel v. Ryan, 182 Mo., 349.

3. There are several other questions in the case in my judgment which urgently demand a reversal of the judgment, but I deem it hardly necessary to enter into a discussion of them. However, I will state this: that when the sheriff of Montague County, who was denied the right or privilege of investigating the books by appellant, called upon appellant in regard to the matter, he was informed by appellant that he had instructions not to let anyone look at the books, and he was only treating the sheriff as he did the others. The sheriff went away. The next day appellant wrote a letter to the county attorney, who was with the sheriff, to the effect that he had been told by the depot agent of the Rock Island Railway Company that under the last Act of the Legislature an officer had a right to look at his books and that, therefore he would let the officer go over the books. The county attorney took the stand and testified that he received this letter. The letter was then offered in evidence, but was rejected. I am of opinion that this letter ought to have gone to the jury.

4. It is also contended that the information and complaint are insufficient in that they fail to allege that the call of the officer to inspect the books was at a reasonable time and during business hours. My brethren hold this contention has no merit. I think it has. The allegation in the information and complaint was that the sheriff called about three o'clock p. m. There is nothing to indicate in the face of

the pleadings by averment that this was a reasonable time in business hours. I do not care to enter into a discussion of this matter at any length.

5. Another question I desire to notice without going into any lengthy discussion, is this conviction ought not to have been had. Appellant was the agent of the express company. The officer called upon him. He informed the officer that he had instructions not to let anyone examine the books unless they had an order from the court. The sheriff went away. The next day appellant informed the county attorney who was with the sheriff at the time they called at the express office, that under further instructions he would let them inspect the books. I do not believe that this state of case justifies this conviction, even if the law is valid. The depot agent, in my judgment, stated the law and the rights of his company correctly in refusing the sheriff an inspection without an order of court. I am not here stating what the order should be or how it should be executed. I merely mean proper legal authority. It is clear that appellant had no intention to violate any law, and that he really did not violate any law from either standpoint above mentioned. It was not a permanent refusal. He had one view of the matter and the sheriff seems to have had another. When he concluded the sheriff was right he at once notified the county attorney that the books were open to the officers. Under this state of case this is a harsh and unjustifiable conviction even if the law was valid. But I am of opinion the appellant was right. Ex parte Gould, supra.

For the reasons above stated I therefore enter my dissent.

ON REHEARING.

June 26, 1912.

PRENDERGAST, JUDGE.—By his motion for rehearing appellant again presents some of the questions decided against him in the original opinion herein.

Among others, he contends that the Act under which he was prosecuted in this case is unconstitutional, because in violation of that provision of our Bill of Rights, section 9, providing that "the people shall be secure in their persons, houses, papers and possessions from all unreasonable seizures or searches" . . . He cites only Ex parte Gould, 60 Texas Crim. Rep., 442, to sustain his contention. In the dissenting opinion herein only that case and Ex parte Conrades, 85 S. W. Rep., 150 and State ex rel. v. Ryan, 182 Mo., 349, are cited to support such contention.

In order that the question may be better understood it is proper to show something of the history of this legislation and of the times and circumstances surrounding it.

The Act under which this prosecution was had in chapter 15, pp. 33-4, of the Act of the Thirty-First Legislature, approved August 19,

1910. That Act itself, as is shown by it, was an amendment of and in lieu of the Act of the Twenty-Ninth Legislature, approved April 18, 1905, pp. 379 to 381. In section 4 of the 1905 Act, the Legislature states this: "The fact that the offices of express companies and other common carriers in prohibition counties and districts are constantly filled with intoxicating liquors which are kept there indefinitely, awaiting the convenience of the consignee thereof, *and the fact that the will of the people is thereby thwarted and the local option laws of this State are thereby, to a great extent, made ineffective,* creates an emergency and an imperative public necessity that the constitutional rule requiring bills to be read on three several days be suspended." . . . This is but the briefest statement of the current history of this State at that time. As a matter of fact, the express companies and the agents thereof in all the prohibition territory of this State, and the liquor dealers whom they served, had become really liquor dealers in prohibition territory, defying and setting at naught the prohibition laws of this State to such an extent as to become a stench in the nostrils of all lawabiding and order loving citizens, whether they were in favor of or against prohibition. As stated in section 4 of said legislative act, it thereupon created an *emergency and became an imperative public necessity,* not only that the Act of 1905, should be enacted, but that even the constitutional rule requiring bills to be read on three several days be suspended in order to pass an Act to remedy the crying evil.

By August 19, 1910, the Legislature, finding some deficiency in the 1905 Act, and in order to still further remedy the said crying evil, in the last section of the 1910 Act amending the 1905 Act, stated therein "the fact that there is now no adequate law requiring express companies, railroad companies, or other common carriers, to keep a book containing the transaction pertaining to the receipt, shipment and transportation and delivery of intoxicating liquor into prohibition territory, to be open to public inspection, creates an emergency and an imperative public necessity that the constitutional rule requiring bills to be read on three several days be and the same is hereby suspended," . . . These two emergency clauses to these two several Acts and the known public evil made it imperative for the Legislature to enact the amended Act of 1910. In order that its provisions may be fully seen, we will here quote the provision of that Act:

"Section 1. Each and every person in this State, who shall place or have placed any package or parcel, of whatever nature, containing any intoxicating liquor, with any express company, railroad company or other common carrier, for shipment or transportation to any point in any county, justice precinct, school district, city or town or subdivision of a county within this State, where the sale of intoxicating liquors has been or may hereafter be prohibited under the laws of this State, shall first place in a conspicuous place, in plain letters, on such package or parcel the words: 'Intoxicating liquor,' the character and

quantity of such intoxicating liquor, the place from where shipped, the place of destination and the names of the consignor and the consignee; and no express company, railroad company or other common carrier, or any agent thereof, in this State, shall accept or receive from any person, firm or corporation for shipment or transportation, to any such point where the sale of intoxicating liquors has been or may hereafter be prohibited, under the laws of this State, any such package or parcel, unless the same shall have been labeled in the manner and form as hereinbefore in this section required, and no express company, railroad company or other common carrier, or any agent thereof, in this State, shall deliver such package or parcel to any other than the consignee in person. Any agent of such express company, railroad company or other common carrier having the custody of any book or books required by this Act of such express company, railroad company or other common carrier, to be kept, shall at the request of any person, at any reasonable time during office hours, produce such book or books for inspection by any officer of the law or any member of the grand jury.

"Any agent of any express company, railroad company or other common carrier, or any other person, who shall violate any of the provisions of this section of this Act shall be deemed guilty of a misdemeanor and upon conviction thereof shall be fined in any sum not less than twenty-five dollars ($25.00) nor more than one hundred dollars ($100.00), and shall be punished by imprisonment in the county jail for any term not less than twenty nor more than sixty days.

"Section 2. When any express company, railroad company or other common carrier, within this State, shall receive any package or parcel of whatsoever nature, whether from a point within or without this State, containing any intoxicating liquor, for transportation to any point within any county, justice precinct, school district, city or town or subdivision of a county where the sale of intoxicating liquors has been prohibited under the laws of this State, such express company, railroad company or other common carrier shall forthwith transport such intoxicating liquor to the place of its destination, and upon the arrival of same at its place of destination, there shall be entered in a book to be kept for that purpose the names of the consignor and the consignee, the exact time of the arrival of such package or parcel at the place of its destination, the place from where shipped, the quantity and character of such intoxicating liquor, as shown on such package or parcel, the exact time delivered to the consignee, if delivered, and the signature of such consignee, who shall sign in person for same before delivery thereof, and such book shall be open at all reasonable hours for inspection by any officer of the law or any member of the grand jury. If such package or parcel be not called for and taken away by the consignee and all charges thereon, if any, paid by such consignee, it shall be the duty of such express company, railroad company or other common carrier to start such package or parcel in transit

back to the consignor thereof within seven days from the time of its arrival at the place of its designation, and the consignor shall be liable to such express company, railroad company, or other common carrier for the express or freight charges in transportation and returning same. Any express company, railroad company or other common carrier, violating any of the provisions of this chapter shall be liable to a penalty of one hundred dollars ($100.00) for each infraction thereof, to be recovered in the name of the State of Texas in any court of competent jurisdiction in any county where such express company, railroad company or other common carriers have an office or an agent or a line of railway; and each day that such intoxicating liquor shall be kept at the place of its destination after the expiration of seven days from the time of its arrival shall be deemed a separate infraction."

By section 2 of this Act it will be seen that it was thereby made the duty of the express companies in receiving shipments of intoxicating liquor to be delivered in prohibition territory to keep a book and therein enter the names of the consignor and the consignee, the exact time of the arrival of such package or parcel at the place of its destination, the place from where shipped, the quantity and character of such intoxicating liquors as shown on such package or parcel, the exact time delivered to the consignee, if delivered, and the signature of such consignee who is required to sign in person before its delivery, *"and such book shall be open at all reasonable hours for inspection by any officer of the law or any member of the grand jury."* It will also be seen by the first paragraph of section 1 that it was the duty of the agent of such express company to produce such book for inspection by any officer of the law or any member of the grand jury upon the request of any person at any reasonable time during office hours and in case he failed or refused to do so, upon conviction, he was to be fined not less than $25 nor more than $100 and by imprisonment in the jail not less than twenty nor more than sixty days.

That all this Act was clearly within the police power of the State, there can be no doubt whatever. No respectable authority, text-book or decision of any court can be found to gainsay it. The Supreme Court of Massachusetts, in Commonwealth v. Intoxicating Liquors, 172 Mass., 314, said:

"Subject to the power of Congress over foreign and interstate commerce, the right of a State to regulate by reasonable laws the manufacture, sale, or transportation of spirituous or intoxicating liquors within its own territorial limits is established by numerous decisions, both of State and national courts. Such a law is not inconsistent either with the Constitution of our State or that of the United States. It comes well within the authority called the police power, subject to which, in various ways, all private property is held, and it is unnecessary to restate here the principles upon which it rests. Commonwealth v. Blackington, 24 Pick. 352; Commonwealth v. Kendall, 12 Cush., 414; Commonwealth v. Clapp, 5 Gray, 97; Commonwealth v. Williams,

6 Gray, 1; Commonwealth v. Bennett, 108 Mass., 27; Commonwealth v. Intoxicating Liquors, 115 Mass., 153; Commonwealth v. Ducey, 126 Mass., 269; Beer Co. v. Massachusetts, 97 U. S., 25; License Cases, 5 How., 504; Leisy v. Hardin, 135 U. S. 100; Carstairs v. O'Donnell, 154 Mass., 357; Mugler v. Kansas, 123 U. S., 623, and cases therein cited." It is needless to cite other authorities from our own State, the decisions of any other State, or of the United States on this subject.

As we read and understand the case of Ex parte Gould, 60 Texas Crim. Rep., 442, it does not sustain appellant's contention. What was the Gould case and what did it hold? In that case the grand jury of Callahan County issued a subpoena duces tecum to require the telegraph company to produce before it "all telegrams sent from the office at Baird, ordering intoxicating liquors; it did not specify whether the liquors ordered were unlawfully sent for; it said all intoxicating liquors . . . The demand made upon the witness was unreasonable and unwarranted; it was too general; it did not relate to any crime committed, nor to any person accused or suspected; it was not directed to the inquiry into any crime; it failed to show the purposes for which the telegrams were demanded, and was but a prying and fishing expedition that can not be authorized by law." The court further in that opinion said: "It will be noted that these subpoenaes do call for messages within a specified time, but do not name the parties who sent the messages, and it was a very general sweeping order." Thereupon this court in that case, because of the generality and lack of description of the messages held that the witness was not in contempt of court in not obeying said subpoena.

But the court in that case held: "We think it clear that telegraphic messages in the possession of officers of the company are not privileged communications and their production can be compelled as other writings. National Bank v. National Bank, 7 W. Va., 544; Scott & Jarn. on Tel., section 378, note; United States v. Babcock, 3 Dill, C. C., 566; Ex parte Brown, 72 Mo., 83. The agent of a telegraph company may, therefore, be compelled by proper process to produce such message before the grand jury, and no rule of the company can excuse him from liability to punishment for refusal so to do." In this case the express company by the law was required to keep a certain book in which it was to record certain and specific facts; that book—not any or all of its other books—by the express provisions of the law, "shall be open at all reasonable hours for inspection by any officer of the law or any member of the grand jury." Unquestionably the Legislature in the exercise of its police power in the regulation of the sale and transportation of intoxicating liquor had the power and the authority to so enact.

The case of Ex parte Conrades, 85 S. W. Rep., 150, as we read and understand it, does not sustain appellant's contention. The syllabi,

which is a fair statement of what is held by the court in the case, is as follows:

"1. A resolution by a municipal house of delegates authorizing the appointment of a committee to investigate reported violations of ordinances imposing merchants' and manufacturers' license taxes, and empowering the committee to 'subpoena witnesses and send for persons and papers,' gave the committee power to issue a subpoena duces tecum to compel the production of the books of a manufacturing company liable to a license tax.

"2. Under St. Louis City Charter, article 3, section 31, giving the municipal assembly power to compel the attendance of witnesses and production of papers relating to any subject in which the interests of the city are involved, the assembly is authorized, in investigating the question of the city's revenues and the reported evasion of merchants' and manufacturers' license taxes, to compel the production of books of a manufacturing company liable to a license tax.

"3. One attached for contempt in refusing to produce books and papers required by a committee of a municipal assembly is not entitled to release on habeas corpus on the ground that the documents required would criminate him, where no such claim was made at the time he refused to produce them, and it did not appear from their character that they would have this effect.

"4. An order of a municipal assembly, made in the exercise of its charter powers requiring the production before it of books of a corporation in aid of investigations as to evasions of license taxes by corporations, is not a violation of the constitutional guaranty against searches and seizures." See also Robison v. Haug, 71 Mich., 38; People v. Shuler, 136 Mich., 165.

As we understand the case of State ex rel. v. Ryan, 182 Mo., 349, has no application to the question in this case.

By the Act of our Twentieth Legislature, March 30, 1887, which was amended by the Act of 1903, page 56, every person selling intoxicating liquors upon prescriptions in prohibition territory, was required to cancel each prescription on which a sale was made, and file it away and on the first day of July, 1903, and every month thereafter, he was required to file such prescriptions with the clerk of the District Court, accompanied by his affidavit stating that such person had sold no intoxicating liquor other than that named in such filled prescriptions and it required the said clerk to preserve said papers for three years and that they were *"subject to the inspection of the grand jury, district, county and precinct officers."* Penal Code, article 598. The next article of the Code made it an offense for anyone to fail to make such sworn report and subjected such person to a fine of not less than $25 nor more than $100. Under these articles of our Code, Tom Holland was prosecuted and convicted for his failure to make such sworn report. This court in an opinion by Presiding Judge Davidson in

Holland v. State, 51 Texas Crim. Rep., 547, sustained the constitutionality of that Act and affirmed the judgment against Holand.

As early as 1866, our Legislature, in order to prevent cattle theft and to detect and convict for such theft, required every butcher, when buying an animal for slaughter to take a bill of sale or written transfer from the person selling the same and not only made it an offense where he failed to take such bill of sale or written transfer (Penal Code, article 1361) but also required him, under oath, to report to the Commissioners' Court of his county at each of its sessions the number, color, age, sex, marks and brands of every animal slaughtered by him since the last term of such court and to accompany such report with such bill of sale or written conveyance to him of every animal slaughtered and in case he failed to make such report, he thereby committed an offense and was subject to a fine of not less than $50 nor more than $300. Convictions under this law and the constitutionality thereof have uniformly been sustained by this court. Dreyer v. State, 10 Texas Crim. App., 97; Aston v. State, 27 Texas Crim. App., 574; Bruns v. State, 33 Texas Crim. Rep., 415.

Again, by this same Act of 1866, amended later, every butcher who failed to keep a true and faithful record in a book kept for that purpose, of cattle purchased and slaughtered by him, together with a description of each animal including color, brand, age, weight and from whom purchased, and the date of the purchase, was subject to a fine of not less than $20 nor more than $200; and it was expressly provided that such book "*shall be open to the inspection of all parties,*" and where he failed to permit such inspection of such book at any reasonable hours, upon conviction he was subject to a fine not exceeding $25. These provisions of this Act have uniformly and continuously been acted upon by the butchers of this State. No one has ever attacked in any way the validity of these acts on any constitutional ground.

Again, our law for many years has required every person under certain circumstances to permit an inspection thereof by the cattle inspector to determine whether they are infected with any disease or ticks, etc. Our law has also required the owners of stock to permit them inspected for certain quarantine purposes. All these laws have been uniformly observed by our citizens and have not been attacked as invalid on any constitutional grounds.

The United States Constitution has substantially the same provision against unreasonable seizures and searches as our Constitution on that subject. It has been the daily practice in every part of the United States where persons or property arrive from a foreign country for the inspection officers without the aid of any court whatever to not only inspect every particle of the baggage and property of such persons before permitting them to enter anywhere in the United States, but also to search the person, and, if need be, require to some extent at least, a disrobing of the person. That such search does not violate

the Constitution of the United States is without question. Such has been the practice uniformly and continuously from day to day since the foundation of our government. No one questions the validity of such search, both of person and of property. If any person should fail or refuse, upon demand of the inspection officer, to furnish the key to his trunk or other receptacle containing his property, or baggage, the officer unhesitatingly by force opens it and examines such property.

Every Legislature of our State which has passed any of our State laws on the subject mentioned above and the Legislature which passed this Act in discussion in this case, had many members both of the House and of the Senate, who were able and eminent lawyers and whether they were lawyers or not, they were intelligent, patriotic and competent citizens of our State, representing the people from every section thereof. They each took the same oath of office to support our Constitution that the members of this court takes. Each Governor of the State, with possible exceptions, since the foundation of our State have been eminent and able lawyers. They too took the same oath to support our Constitution that the judges of this court takes and every Act of our Legislature on the subject above mentioned and the particular Act in question in this case, were approved by the respective Governors, under their official oaths, as being constitutional. So that as to this Act and the others we have two of the independent co-ordinate branches of the government, under their official oaths passing upon this Act of the Legislature as valid and not unconstitutional. This, of course, would not prevent this court from also passing on such constitutionality but should and does have its weight. The universal rule by all the courts is, that no Act of the Legislature should be declared unconstitutional, unless it is *without doubt, and clearly so.*

It is not every search that our Constitution inhibits. It is only *unreasonable* searches. In our opinion that provision of our Bill of Rights, prohibiting unreasonable seizures and searches, if it has any application whatever to the statute in question in this case, has, in no way, been violated and said Act of the Legislature is, in our opinion, in every way valid and constitutional.

The Legislature of Michigan passed this Act: "Every druggist keeping a drugstore in any county adopting prohibition under this Act shall make and swear to, or cause to be made and sworn to, a true written or printed statement, signed and duly sworn to by himself or his clerk, on Monday of each and every week, giving the full name and residence of every person procuring liquor at his drugstore during the last week, the kind and quantity of liquor procured, and the date of procuring the same, and the object for which each purchase was made, and on such Mondays shall deliver or mail, prepaying the postage thereon, the same to the prosecuting attorney of the county where such store is situated, who shall preserve the same in his office; and all such statements shall be open to inspection to all citizens."

The Supreme Court of that State, in People v. Henwood, 123 Mich., 317, sustained the constitutionality of that Act wherein it was attacked as being unconstitutional because in contravention of the article of the Constitution of that State against unreasonable searches and seizures which was in substance, if not in exact words, the same as our Bill of Rights on that subject. And also sustained it against an attack of the constitutional provision, which is in substance the same as ours, that no person shall be compelled in a criminal case to be a witness against himself, nor deprived of life, liberty or property without due process of law.

In the State ex rel. Braden v. Chamberlain, 74 Iowa, 266, the Supreme Court sustained the validity of an Act of the Legislature of that State requiring everyone, holding a permit to manufacture or sell intoxicating liquor, to return at stated periods under oath, a report of the persons to whom sale had been made for the preceding period, stating in the opinion: "It is evident that the making of a return after the date fixed by statute, would constitute no defense to this action. It is the purpose of the statute to secure the making of prompt and accurate returns as an inducement to comply with the law in regard to the sale of intoxicating liquors and as a means of enforcing it."

In the said case of Commonwealth v. Intoxicating Liquors, 172 Mass., 311, a statute requiring all liquors shipped into dry territory to be carried by regular carriers in packages plainly marked with the consignor and consignee's name and address plainly marked thereon, and also with the name of the liquor marked in plain letters thereon; and also requiring the carriers to keep a record of such packages carried, under a penalty of a forfeiture of the liquor for failure, was held constitutional as being within the valid exercise of the police power of the State.

In the case of the State v. Smith, 74 Iowa, 580, the Supreme Court of that State, held valid the Act of the Legislature requiring registered pharmacists, holding a permit authorizing him to sell intoxicating liquors, to make monthly reports thereof; and also held in that case that such reports could be introduced against them in a prosecution for violation of that Act.

In the case of Stephens v. State, 139 S. W., 1146, in a prosecution against the sale of intoxicating liquors in prohibition territory, this court held that the said book required to be kept under the Act in question made said book "*at least* a quasi public record."

By the Act of April 3, 1891, creating the Railroad Commission of this State and defining its powers and duties, among other things, was expressly enacted that the Railroad Commissioners or either of them, or any such persons as they might employ therefor, "shall have the right at such times as they may deem necessary to inspect the books and papers of any railroad company and to examine under oath any officer, agent or employe of such railroad in relation to the business and affairs of the same." And not only made it a penalty against the

railroad of not less than $125 nor more than $500 for each day it should fail or refuse to permit such examination, etc., but in addition, made it an offense punishable by fine of not less than $125 and not to exceed $500 for any officer, agent or employe to fail or refuse to exhibit to the Commissioners, etc., any book or paper of such railroad company in his possession or control. So far as we are advised that Act has never been attacked as unconstitutional or otherwise invalid, but has all the time been acted upon by the Railroad Commissioners, and all the books of the companies examined by the Commissioners or either of them, or by any one else directed by them, or under their authority, at any and all times at the pleasure of said Commissioners, or either of them. No railroad company, so far as we are advised, although generally represented by what are regarded as the ablest attorneys of this State, and who seem at all times disposed to contest the validity to the utmost of every provision of law which attempts, as they think, to interfere with their business or permit any other to examine into their books or papers or affairs, has at any time attacked this provision of the law.

The statement in the dissenting opinion that "it appears from the record that the court was not present any more during the trial of the case," after he had retired to prepare his charge the second time, as shown by the original opinion herein, is not borne out by the record, but the reverse of this is shown. The record does not expressly show the exact time he returned with his charge, but from all the facts stated in the record it is perfectly clear that he was out preparing his charge in this case only a comparatively short time and that he returned to the courtroom, proceeded to deliver to the jury his written charge and that the jury retired with it and afterwards returned into open court the verdict herein rendered. *The judge at no time and in no way abandoned or dissolved the court.* As stated in the original opinion, we do not sanction but condemn even the temporary absence from the courtroom of the judge pending a trial, but where, as in this case, as well as those cited in the original opinion, no possible injury occurred to the appellant and none could have occurred to him, such temporary absence of the judge in no way was cause for reversal.

We think it could not seriously be contended that the letter the appellant himself wrote to the sheriff the next day after he had committed the offense could be introduced in evidence. It would certainly be subversive of all rules of evidence if an appellant could manufacture testimony in this way for himself, after the commission of an offense. Selfserving declarations as well as selfserving letters by an accused are never admissible when not res gestae, and there is no intimation from any source that this letter was res gestae. Besides, as stated in the original opinion, the substantial contents of the letter was shown without objection and the fact that the appellant had written the letter was also shown without question. Even if the letter

itself had been admitted it could not and would not have proven any additional fact that· was not proven and established without contradiction.

Neither can it be seriously contended, as we apprehend, that after the unquestioned commission of the offense by the appellant on one day, because he repented the next and was then willing to comply with the law and might not again commit the offense of refusing to let the officers see the book, can be any possible defense to his unquestioned commission of the offense the day before. If this were the case every person, after the complete commission of an offense one day, might repent the next and by his repentance and offer to comply with the law thereafter, be entitled to an acquittal of the offense already committed. No such doctrine can be maintained in any court. At most, such matters might be an appeal to executive clemency. This court can not pardon offenses. That power is exclusively in another coordinate branch of this government, the executive.

It is unnecessary to discuss again any of the other questions raised on this appeal as they were all properly disposed of after full consideration by the original opinion.

The motion for rehearing is overruled.

*Overruled.*

DAVIDSON, Presiding Judge (dissenting).—I filed a written dissent when original opinion was handed down. I deem it unnecessary to write further. I could not add anything, and do not care to do so, to what was said by this court in Ex parte Gould, 60 Texas Crim. Rep., 442, speaking through Judge McCord. That opinion is unanswered and unanswerable. If what was said in that opinion and in the opinion written by Judge Williams, speaking for our Supreme Court in Dupree v. State, 102 Texas Reports, 455, is not correct and the law, I could not hope to add anything or give reasons more satisfactory. I do not believe it is the law, that at the capricious demand of idle curiosity or suspicion, without due process of law, that officers can be authorized to pry into the affairs of our people. That investigation of common carriers may be had under proper circumstances upon proper showing at the hands of judicial or other legal authority may be conceded. But that is not here involved. Ex parte Gould, 60 Texas Crim. Rep., 442.

I can not agree to sustaining the Act of the Legislature upheld by the majority. The Act is unconstitutional. The conviction in this case should not have a place in our jurisprudence.